

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **SEP 1 8 2014**

*Madsen, C.J.*

*CHIEF JUSTICE*

This opinion was filed for record
at **8:00 A.m** on *Sept. 18, 2014*

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) ) | |
| FLORENCE R. FRIAS, | ) ) | No. 89343-8 |
| Plaintiff, | ) ) | EN BANC |
| v. | ) ) | Filed: **SEP 1 8 2014** |
| ASSET FORECLOSURE SERVICES, INC.; LSI TITLE AGENCY, INC.; U.S. BANK, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOE DEFENDANTS 1-20, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

FAIRHURST, J.—We have been asked by the United States District Court for the Western District of Washington to determine whether state law recognizes a cause of action for monetary damages where a plaintiff alleges violations of the deeds of trust act (DTA), chapter 61.24 RCW, but no foreclosure sale has been

completed. We are also asked to articulate the principles that would apply to such a claim under the DTA and the Consumer Protection Act (CPA), chapter 19.86 RCW.

We hold that the DTA does not create an independent cause of action for monetary damages based on alleged violations of its provisions where no foreclosure sale has been completed. The answer to the first certified question is no—at least not pursuant to the DTA itself. We further hold that under appropriate factual circumstances, DTA violations may be actionable under the CPA, even where no foreclosure sale has been completed. The answer to the second certified question is that the same principles that govern CPA claims generally apply to CPA claims based on alleged DTA violations.

## I.     FACTUAL AND PROCEDURAL HISTORY

In September 2008, plaintiff Florence R. Frias entered a promissory note secured by a deed of trust encumbering real property in Marysville, Washington. Defendant U.S. Bank National Association was identified on the note and deed of trust as the lender, and defendant Mortgage Electronic Registration Systems Inc. was identified as the beneficiary on the deed of trust. Frias eventually defaulted on her payments and attempted to contact representatives from U.S. Bank to obtain a loan modification. While Frias was waiting for a response from U.S. Bank, she received a notice of default followed by a notice of trustee's sale. Frias continued

working towards a loan modification, and the trustee's foreclosure sale was voluntarily discontinued.

Frias received another notice of trustee's sale in May 2011, which relied on the prior notice of default. The notice of trustee's sale included an itemization of the fees Frias needed to pay to stop the sale, including an auctioneer fee, a bankruptcy check fee, an assignment recording fee, and a fee for the anticipated cost of recording a trustee's deed following the trustee's sale, all of which Frias alleges are, at best, unreasonable in amount and, at worst, simply illegal.

Approximately 90 days later, in July 2011, Frias received a loan modification offer from U.S. Bank. Frias alleges the modification offer was unworkable because it required her to devote more than half of her gross income to her monthly mortgage payments. The May 2011 notice of trustee's sale did not indicate the sale would be delayed to accommodate Frias' efforts at loan modification, and the sale was not discontinued or postponed after U.S. Bank made its July 2011 modification offer.

In August 2011, Frias contacted a housing counselor in an attempt to participate in mediation pursuant to the Washington foreclosure fairness act. LAWS OF 2011, ch. 58. Frias' case was referred to the appropriate agency and a mediator was appointed. At the scheduled mediation session, Frias appeared, but no one appeared on behalf of the beneficiary. The mediation was rescheduled and U.S. Bank's attorney confirmed the foreclosure sale would be stayed pending mediation.

At the second scheduled mediation session, Frias learned the sale had gone forward as originally scheduled—after the first scheduled mediation session but before the second. U.S. Bank was the successful bidder, but the sale was not completed because the deed to the property was not issued. A third mediation session was scheduled to give U.S. Bank time to reverse the wrongful foreclosure sale and produce the required documentation. At that third session, U.S. Bank still did not have all its required documentation and refused to consider modifying Frias' loan. The mediator determined U.S. Bank had not participated in mediation in good faith.

Frias claims she is now uncertain of her status—she still has title to her home but has not entered a loan modification agreement and has not made any payments on her promissory note since mediation, though she would like to. Frias alleges this uncertainty has caused her emotional distress accompanied by physical symptoms.

Frias filed a summons and complaint in Snohomish County Superior Court. She named a cause of action against all defendants under the CPA, alleging that U.S. Bank refused to mediate in good faith in violation of the DTA, that various defendants made numerous misrepresentations to her, that defendants Asset Foreclosure Services Inc. and LSI Title Agency Inc. do not have legal authority to act as foreclosing trustees in Washington, and that the defendants falsely inflated the costs of the improper foreclosure sale for their own profit. Frias also named a cause of action for violations of the DTA against Asset Foreclosure and LSI as purported

trustees. Frias alleges these defendants violated their duties of good faith by initiating the foreclosure sale when they did not have legal authority to act as trustees and when they made demands for unreasonable payments not permitted by the DTA.

The matter was removed to the United States District Court for the Western District of Washington, and all defendants successfully moved for dismissal under Fed. R. Civ. P. 12(b)(6). As to the CPA claim, the federal court held Frias failed to allege any compensable injury because her property had not been sold and she had not paid any foreclosure fees. As to the DTA claim, the federal court held Frias could not state a cause of action under the DTA because no foreclosure sale had occurred. These holdings are consistent with prior western district decisions. *E.g., Vawter v. Quality Loan Serv. Corp. of Wash.*, 707 F. Supp. 2d 1115, 1123-24, 1129-30 (2010).

Frias moved for reconsideration. While her motion was pending, Division One of the Court of Appeals held in a published opinion that Washington law recognizes a cause of action for monetary damages under both the DTA and CPA for alleged DTA violations, even if no foreclosure sale has been completed. *Walker v. Quality Loan Serv. Corp.*, 176 Wn. App. 294, 313, 320, 308 P.3d 716 (2013). In light of *Walker*, the federal court refrained from ruling on Frias' motion for reconsideration and instead certified two questions to this court.

## II.    CERTIFIED QUESTIONS PRESENTED

1.    Under Washington law, may a plaintiff state a claim for damages relating to breach of duties under the [DTA] and/or failure to adhere to the statutory requirements of the [DTA] in the absence of a completed trustee's sale of real property?

2.    If a plaintiff may state a claim for damages prior to a trustee's sale of real property, what principles govern his or her claim under the [CPA] and the [DTA]?

Order Certifying Questions to the Wash. Supreme Ct. at 3.

## III.    STANDARD OF REVIEW

Certified questions are matters of law we review de novo. *Carlsen v. Global Client Solutions, LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011). We consider the questions presented in light of the record certified by the federal court. *Id.* Because the federal court certified these questions in connection with a motion for dismissal for failure to state a claim on which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), all facts alleged in the complaint are accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

## IV.    ANALYSIS

In light of the submissions made in this case, we must first specify the scope and nature of our analysis. We then analyze whether the DTA implies a cause of action for damages premised on DTA violations absent a completed foreclosure sale, and we conclude it does not. Finally, we hold that the ordinary principles governing CPA claims generally apply to CPA claims premised on alleged DTA violations.

6

A.    Our analysis is one of statutory construction, and we decline to consider submissions that make factual assertions and public policy arguments

As a preliminary matter, we must address submissions by some parties and amici that make factual assertions and policy arguments. In matters of statutory construction, we are tasked with discerning what the law is, not what it should be. We are in no position to analyze the large-scale impacts of accepting or rejecting Frias' position. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 109, 285 P.3d 34 (2012) ("The legislature, not this court, is in the best position to assess policy considerations."). And because this case is before us on certified questions from the federal court, our decision will be made on the certified record. RCW 2.60.010(4)-(5); RAP 16.16(d); *cf. Bain*, 175 Wn.2d at 114 (declining to answer a certified question because "resolution of the question before us depends on what actually occurred with the loans before us, and that evidence is not in the record").

We therefore decline all explicit and implicit requests that we take judicial notice of irrelevant submissions, including all of the following: materials and decisions from unrelated cases brought in federal bankruptcy courts or state superior courts; cases interpreting unrelated federal statutes; studies about the impacts of DTA-based actions on costs and on the availability of loan modifications; studies showing Washington's continued economic volatility, linking foreclosure rates to physical health problems, noting the financial disparity between borrowers and lenders, and pointing to the presence of hedge funds and out-of-state lenders in the

loan servicing market; and news articles about unrelated instances of lender misconduct and other homeowners' negative experiences with nonjudicial foreclosure.

B.     The DTA does not create a cause of action for violations of its terms in the absence of a completed foreclosure sale

A statute can create a cause of action either expressly or by implication. *Ducote v. Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 702-03, 222 P.3d 785 (2009). At oral argument, Frias conceded that no provision of the DTA expressly creates a cause of action for monetary damages premised on a trustee's material DTA violations in the absence of a completed foreclosure sale. Wash. Supreme Court oral argument, *Frias v. Asset Foreclosure Servs., Inc.*, No. 89343-8 (Feb. 27, 2014), at 3 min., 20 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. Frias' concession is well taken, and we consider only whether such a cause of action is implied.

As in all questions of statutory construction, our goal is to discern and give effect to legislative intent. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1976). To do so, we consider the following: "[F]irst, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." *Bennett v. Hardy*, 113

8

Wn.2d 912, 920-21, 784 P.2d 1258 (1990) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1353 (9th Cir. 1987)).

Frias is within the class for whose benefit RCW 61.24.127 was enacted. We can find no explicit legislative intent that addresses the issue presented, but implicit legislative intent supports denying a remedy. Implying the cause of action Frias seeks to assert would be neutral as to most underlying purposes of the legislation and detrimental to one. Therefore, we hold the DTA does not imply a cause of action for monetary damages premised on DTA violations absent a completed foreclosure sale.

1. Frias is a member of the class for whose especial benefit RCW 61.24.127 was enacted

The plain language of RCW 61.24.127, which is our primary focus, leaves no doubt that it was enacted to benefit borrowers or grantors subjected to nonjudicial foreclosure of owner-occupied real estate by preserving their right to bring damages claims that might have been deemed waived before the statute was enacted. *E.g.*, *Brown v. Household Realty Corp.*, 146 Wn. App. 157, 169, 189 P.3d 233 (2008). Frias is certainly a borrower who has been subjected to nonjudicial foreclosure proceedings of her owner-occupied real property and so is within the class for whose especial benefit the statute was enacted.

2.    There is no legislative history that explicitly supports creating or denying a remedy, but there is implicit support for denying it

Next, we look to explicit and implicit legislative intent. RCW 61.24.127(1) provides, in relevant part, "The failure of the borrower or grantor to bring a civil action to enjoin a foreclosure sale under this chapter may not be deemed a waiver of a claim for damages asserting: . . . (c) Failure of the trustee to materially comply with the provisions of this chapter." Without question, this provision explicitly recognizes an independent cause of action for damages premised on a trustee's material DTA violations. However, it does not state when such a cause of action accrues, so that is the question we must answer. *Cf. Ducote*, 167 Wn.2d at 703 (noting RCW 26.44.050 does create a cause of action for negligent investigation of suspected child abuse but analyzing the class of individuals with standing to bring such a claim as a separate inquiry).

We cannot find any explicit indicators that the legislature intended to either allow or deny the cause of action Frias seeks to assert. Indicators of implicit legislative intent, however, show that the legislature did not intend to imply a cause of action for money damages under the DTA absent a completed foreclosure sale.

a)    There is no explicit legislative intent on the issue presented

Something is "explicit" when it is "characterized by full clear expression : being without vagueness or ambiguity : leaving nothing implied : UNEQUIVOCAL." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 801 (2002). Frias contends

10

there is explicit evidence of legislative intent supporting her position because "the only logical reading" of RCW 61.24.127 is to presume that damages claims under the DTA must exist prior to a foreclosure sale. Pl. Frias' Opening Br. on Questions Certified to the Supreme Ct. by the U.S. Dist. Ct. at 50 (citing *Walker*, 176 Wn. App. at 310-11); *accord Bavand v. OneWest Bank, F.S.B.*, 176 Wn. App. 475, 496, 309 P.3d 636 (2013). This reading is logically mandated, Frias argues, because that statute states a claim for damages under the DTA is not waived where the borrower does not seek to enjoin the foreclosure sale, and, in order to be waived, the claim must exist in the first place. Frias' interpretation, though reasonable, is not logically mandated and does not provide the explicit legislative intent she attributes to it.

Frias conflates the right to bring a cause of action with the time at which a particular claim accrues. One cannot waive a right that does not exist, but one can waive the right to bring a claim for damages before the claim accrues. A classic example is the contractual preinjury release—party A agrees not to bring a cause of action for damages arising from the contract even if party B is negligent. Because at the time the contract is signed, it is unknown whether B ever will be negligent, A's claim for damages has not yet accrued. However, a contractual preinjury release will be upheld as a valid waiver of A's right to bring a claim for B's negligence, should it ever occur, so long as the provision does not violate public policy. *See Vodopest v. MacGregor*, 128 Wn.2d 840, 848, 913 P.2d 779 (1996).

We can find no statute or legislative history that explicitly—that is, without vagueness, ambiguity, or implication—addresses whether one can bring an action for damages under the DTA absent a completed foreclosure sale. There is simply no explicit legislative intent either way.

b)     Implicit legislative intent counsels against accepting Frias' position

Because there is no explicit statement of legislative intent regarding whether a claim for damages under the DTA is actionable absent a completed foreclosure sale, we must look for sources that might imply the answer. Frias contends that this issue was not raised in the process of enacting RCW 61.24.127 because it was already decided; that is, the legislature assumed it was already settled that a claim for damages under the DTA absent a completed foreclosure sale is actionable. The defendants contend that the legislature simply never considered whether to allow such a claim or not, and so has not implicitly recognized it—at least not yet. Available sources support the defendants' position.

It is undisputed that the legislature's primary purpose in enacting RCW 61.24.127 was to supersede the Court of Appeals' holding in *Brown*, 146 Wn. App. 157. See Hr'g on S.B. 5810 Before the S. Fin. Insts., Hous. & Ins. Comm. 61st Leg., Reg. Sess. (Feb. 18, 2009), at 58 min., 33 sec.; 1 hr., 12 min., 14 sec.; Hr'g on S.S.B. 5810 Before the S. Fin. Insts., Hous. & Ins. Comm. 61st Leg., Reg. Sess. (Feb. 24, 2009), at 36 min., 55 sec.; Hr'g on E.S.B. 5810 Before the H. Judiciary Comm. 61st

12

Leg., Reg. Sess. (Mar. 23, 2009), at 45 min., 7 sec.[1] *Brown* held that a cause of action for damages under the DTA is waived when the borrower does not seek to enjoin the foreclosure sale before it happens. The damages claim at issue in *Brown* was not brought until well after a completed foreclosure sale, and the question of whether to allow a damages claim under the DTA absent a completed foreclosure sale was not raised in connection with the enactment of RCW 61.24.127 in any source we can locate.

Other than her argument that RCW 61.24.127 necessarily presumes a cause of action for damages under the DTA absent a completed foreclosure sale, Frias does not point to, and we cannot locate, any provision or legislative history implicitly supporting her position. As discussed above, we do not find that argument persuasive. We also cannot simply resort to our general rule of construing the DTA in favor of borrowers to resolve the question. The purpose of that rule is to protect the borrowers' interests in his or her own real property, but construing the DTA as Frias advocates here would not protect her real property interests—it would provide monetary compensation in the *absence* of damage to Frias' real property interests. *Cf. Udall v. T.D. Escrow Servs., Inc.*, 159 Wn.2d 903, 916, 154 P.3d 882 (2007) (rejecting borrower's argument that his interpretation should prevail because the act complained of "does not injure the borrower's interests").

---

[1]Recordings of all committee hearings cited herein are available at http://www.tvw.org.

On the other hand, the defendants' position finds support in RCW 61.24.127(2), which sets restrictions on the nonwaived claims enumerated in RCW 61.24.127(1). The way the legislature phrased these restrictions strongly implies that a cause of action under the DTA for a trustee's material statutory violations is not available until after a completed foreclosure sale:

> The nonwaived claims listed under subsection (1) of this section are subject to the following limitations:
>
> (a) The claim must be asserted or brought within two years from the date of the foreclosure sale or within the applicable statute of limitations for such claim, whichever expires earlier;
>
> . . . .
>
> (c) The claim may not affect in any way the validity or finality of the foreclosure sale or a subsequent transfer of the property;
>
> (d) A borrower or grantor who files such a claim is prohibited from recording a lis pendens or any other document purporting to create a similar effect, related to the real property foreclosed upon;
>
> (e) The claim may not operate in any way to encumber or cloud the title to the property that was subject to the foreclosure sale, except to the extent that a judgment on the claim in favor of the borrower or grantor may, consistent with RCW 4.56.190, become a judgment lien on real property then owned by the judgment debtor.

RCW 61.24.127(2). Notably, all of these limitations refer to "the" foreclosure sale. The use of a definite article "the"—as opposed to an indefinite article "a"—is indicative of the legislature's intent to specify or particularize the word that follows. *City of Olympia v. Drebick*, 156 Wn.2d 289, 297-98, 126 P.3d 802 (2006) (citing *Cowiche Growers, Inc. v. Bates*, 10 Wn.2d 585, 618, 117 P.2d 624 (1941) (Simpson, J., dissenting)). Plainly, the specific foreclosure sale referred to in RCW

14

61.24.127(2) is the foreclosure sale the borrower or grantor did not bring a civil action to enjoin. While foreclosure generally is a process rather than an event, "the foreclosure sale" is a single, specific event, and the limitations in RCW 61.24.127(2) all speak of that foreclosure sale in the past tense, clearly contemplating it has already happened.[2]

From the limited evidence available, we find there is no legislative intent that implicitly supports recognizing the DTA cause of action Frias seeks to assert; all the evidence implies that the legislature has not yet considered whether to allow a cause of action for damages under the DTA absent a completed foreclosure sale. Because the legislature has never considered the issue, it would be strange to hold the legislature has already implicitly decided it—we are not in a position to impute to the legislature the intent we think it will have if it does consider the issue. Further, the limitations in RCW 61.24.127(2) provide implicit support for the defendants' position—under the current statutory framework, there is no independent cause of action under the DTA for DTA violations absent a completed foreclosure sale.

---

[2]While a foreclosure sale did occur in this case, it was voided, as allowed by RCW 61.24.050(2). Once something is declared void, it never happened at all for legal purposes. BLACK'S LAW DICTIONARY 1709 (9th ed. 2009) (defining "void" as "[o]f no legal effect; null").

15

3.    Implying the remedy Frias seeks would not promote the purposes behind RCW 61.24.127 and the DTA

Finally, we consider the purposes behind RCW 61.24.127 specifically and the DTA generally to determine whether implying a cause of action for a trustee's material DTA violations absent a completed foreclosure sale is consistent with those purposes. Deciding the issue in Frias' favor would be inconsistent with one of the purposes of the DTA and neutral to the other relevant purposes.

As discussed above, the purpose behind RCW 61.24.127 was to supersede *Brown. Brown* dealt with a damages action brought after a completed foreclosure sale, and so implying a damages action absent a completed foreclosure sale neither furthers nor hinders the legislature's specific purpose in passing RCW 61.24.127.

The purposes of the DTA generally are well established: "'First, the nonjudicial foreclosure process should remain efficient and inexpensive. Second, the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure. Third, the process should promote the stability of land titles.'" *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013) (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Clearly, if a borrower's claim for damages accrues as soon as the trustee engages in material noncompliance with the DTA (or as soon as the borrower reasonably should know of the facts tending to show such noncompliance), nonjudicial foreclosure will be rendered less efficient and more expensive.

16

The accrual of a damages claim prior to a completed foreclosure sale is neutral as to the purpose of giving interested parties adequate opportunities to prevent wrongful foreclosure. Wrongful foreclosure is *prevented* when a borrower obtains a restraining order or injunction based on material DTA violations, while wrongful foreclosure is *compensated* when a borrower recovers damages for material DTA violations. There is no indication that stability of land titles will be either promoted or impeded by accepting Frias' interpretation of RCW 61.24.127 because a cause of action for damages under RCW 61.24.127 cannot serve to affect title to the real property at issue. RCW 61.24.127(2).

Thus, implying a presale damages action under RCW 61.24.127 would be inconsistent with the DTA's purpose of efficient and inexpensive foreclosure, and is neutral as to the other purposes relevant to our consideration.

We therefore hold that, while Frias is a member of the class for whose especial benefit RCW 61.24.127 was passed, available sources of legislative intent indicate the legislature has never actually considered whether to create a cause of action for monetary damages under the DTA absent a completed foreclosure sale. What the legislature would do upon considering the issue is beyond our judicial ken. Imputing to the legislature an intent to create this cause of action would be at odds with RCW 61.24.127(2) and would not serve the purposes underlying RCW 61.24.127 or the DTA generally. Under the existing statutory framework, we hold there is no

17

actionable, independent cause of action for monetary damages under the DTA based on DTA violations absent a completed foreclosure sale.

C.     Even in the absence of a completed foreclosure sale, violations of the DTA may be actionable under the CPA under ordinary CPA principles

Frias' CPA claim must be analyzed under the same principles that apply to any CPA claim. Even where there is no completed foreclosure sale and no allegation the plaintiff has paid any foreclosure fees, it is possible for a plaintiff to suffer injury to business or property caused by alleged DTA violations that could be compensable under the CPA.

1.     RCW 61.24.127 does not modify the elements of a cause of action under the CPA or the time at which such an action accrues

Unlike a DTA-based cause of action for damages, the CPA is a preexisting statutory cause of action, with established elements. RCW 61.24.127 plainly intends to preserve, rather than modify, the availability of a CPA claim where a borrower does not seek to enjoin a foreclosure sale before it happens. *See* RCW 61.24.127(2)(f) (preserving statutory CPA remedies, notwithstanding limitations on damages for other nonwaived claims under RCW 61.24.127). Further, because CPA actions, unlike DTA actions for a trustee's material violations, are governed by their own body of statutes and case law, the limitations in RCW 61.24.127(2) are not at odds with a CPA cause of action absent a completed foreclosure sale, as they are in the case of a DTA cause of action for damages.

18

2.  Frias arguably pleaded injuries that could be compensable under the CPA

Compensable injuries under the CPA are limited to "injury to [the] plaintiff in his or her business or property." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Without question, where a plaintiff actually loses title to her house in a foreclosure sale or actually remits foreclosure fees, that plaintiff has suffered injury to his or her property. However, those injuries are not necessary to state a CPA claim—other business or property injuries might be caused when a lender or trustee engages in an unfair or deceptive practice in the nonjudicial foreclosure context. We believe Frias did allege some injuries that may be compensable under the CPA.

The CPA's requirement that injury be to business or property excludes personal injury, "mental distress, embarrassment, and inconvenience." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009). The financial consequences of such personal injuries are also excluded. *Ambach v. French*, 167 Wn.2d 167, 178, 216 P.3d 405 (2009). Otherwise, however, the business and property injuries compensable under the CPA are relatively expansive.

Because the CPA addresses "injuries" rather than "damages," quantifiable monetary loss is not required. *Panag*, 166 Wn.2d at 58. A CPA plaintiff can establish injury based on unlawful debt collection practices even where there is no dispute as to the validity of the underlying debt. *Id.* at 55-56 & n.13. Where a business demands

19

payment not lawfully due, the consumer can claim injury for expenses he or she incurred in responding, even if the consumer did not remit the payment demanded. *Id.* at 62 ("Consulting an attorney to dispel uncertainty regarding the nature of an alleged debt is distinct from consulting an attorney to institute a CPA claim. Although the latter is insufficient to show injury to business or property, the former is not." (citations omitted)). The injury element can be met even where the injury alleged is both minimal and temporary. *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 854, 792 P.2d 142 (1990).

Here, Frias alleges she was denied the chance to obtain a reasonable loan modification because U.S. Bank refused to participate in mediation in good faith. Where a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property within the meaning of the CPA. *Cf. Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 795, 295 P.3d 1179 (2013) (holding a CPA injury was pleaded where a falsely backdated notarization allowed a foreclosure sale to happen earlier than it could have otherwise, cutting short the borrower's chance to close sale on the real property with a private purchaser for a higher price).

Frias further alleges numerous illegal fees have been added to her debt. Even though she has not paid those fees, expenses incurred in investigating their legality may be compensable, and she may be entitled to equitable relief in the form of those

20

fees being stricken, if they have not already been. *Panag*, 166 Wn.2d at 62-63. Frias also alleges that she appeared for a scheduled mediation session and no one appeared on behalf of U.S. Bank and that when Frias appeared for the rescheduled mediation session, U.S Bank was not prepared. The expenses Frias incurred in the extra mediation sessions allegedly necessitated by U.S. Bank's failure to prepare and mediate in good faith could be an injury compensable under the CPA. *Id.* at 64.

Although Frias' alleged emotional distress and associated physical symptoms are not compensable under the CPA, she did plead other injuries to her property that could be compensable under the CPA. Loss of title or payment of illegal fees are sufficient, but not necessary, to plead an injury compensable under the CPA based on alleged DTA violations.

3.      CPA claims alleging DTA violations are governed by the same principles as other CPA claims

As noted above, nothing about the DTA indicates a CPA claim should be subject to a different analysis where the CPA claim is premised on alleged DTA violations as opposed to any other alleged wrongful acts. In response to the second certified question, we hold that the analysis of the elements of a CPA action premised on alleged DTA violations is the same as the analysis of the elements of a CPA claim premised on any other allegedly unfair or deceptive practice with a public interest impact occurring in trade or commerce that has allegedly proximately caused injury

21

to a plaintiff's business or property. *See, e.g.*, ch. 19.86 RCW; *Klem*, 176 Wn.2d at 782-97; *Panag*, 166 Wn.2d at 37-65; *Hangman Ridge*, 105 Wn.2d at 783-93.

## V.    CONCLUSION

We hold the answer to the first question certified by the federal court is no: Washington does not recognize an independent cause of action under the DTA seeking monetary damages for alleged DTA violations absent a completed foreclosure sale.

We hold the answer to the second question is that under appropriate circumstances DTA violations may be actionable under the CPA regardless of whether a foreclosure sale has been completed. Such claims are governed by the ordinary principles applicable to all CPA claims.

_Fairhurst, J._

WE CONCUR: †

_Madsen, C.J._

_Owens, J._

_González, J._

_Stephens, J._

† Judge C.C. Bridgewater participated as a justice pro tempore at the argument of this appeal but died prior to the filing of the opinion.

No. 89343-8

WIGGINS, J. (dissenting in part/concurring in part)—The United States District Court for the Western District of Washington certified two questions for our review. While I agree with the majority's answer to the second question, I disagree with the majority's answer to the first. The first certified question is whether "a plaintiff [may] state a claim for damages relating to a breach of duties under the Deed of Trust Act and/or failure to adhere to the statutory requirements of the Deed of Trust Act in the absence of a completed trustee's sale of real property." Order Certifying Questions to the Wash. Supreme Ct. at 3. The majority's answer is no; the answer should be the careful, lawyerly response: it depends. It depends on who the defendant is (e.g., a borrower, grantor, trustee, or guarantor) and which statutory duty the defendant breached. The majority categorically precludes claims for damages absent a completed trustee's sale under the deeds of trust act (DTA), chapter 61.24 RCW, without a discussion of the various duties created in the statute. *See* majority at 2. I would focus on the trustee's duty of good faith to the borrower, beneficiary, and grantor, which is the violation Florence Frias asserts. I conclude that a borrower, like

Frias, may sue a trustee for breach of this duty, even in the absence of a completed trustee's sale.

ANALYSIS

The legislature may implicitly or explicitly create a cause of action. *See Ducote v. Dep't of Soc. & Health Servs.*, 167 Wn.2d 697, 702-03, 222 P.3d 785 (2009). Whether a statute creates a cause of action is a matter of statutory construction. *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 100 S. Ct. 242, 62 L. Ed. 2d 146 (1979). As in most matters of statutory construction, our ultimate goal is to determine the intent of the legislature. *See id.* at 15-16. If the legislature does not expressly create a cause of action, our court utilizes a three-part test to determine the legislature's intent. *Bennett v. Hardy*, 113 Wn.2d 912, 920-21, 784 P.2d 1258 (1990). We determine whether the plaintiff is "within the class for whose 'especial' benefit the statute was enacted"; whether "legislative intent, explicitly or implicitly, supports creating or denying a remedy"; and "whether implying a remedy is consistent with the underlying purpose of the legislation." *Id.*

Using this test, I conclude that the legislature implicitly created a cause of action against a trustee for breach of its duty of good faith that is not dependent on a completed trustee's sale.

*Part 1: Frias is a member of the class protected by the statute*

The first part of the test is satisfied because Frias is "within the class for whose 'especial' benefit the statute was enacted . . . ." *Bennett*, 113 Wn.2d at 920. RCW

2

61.24.010(4) states, "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." The clear legislative intent is to protect borrowers, beneficiaries, and grantors from actions taken in bad faith by trustees. Frias is a borrower under the act, whose interest the legislature sought to protect.

*Part 2: Legislative intent supports creating a claim*

Legislative intent explicitly and implicitly supports creating a cause of action against the trustee (even prior to a completed trustee's sale). *Bennett*, 113 Wn.2d at 920. The explicit support is found in RCW 61.24.127. The statute states that a borrower or grantor does not waive a claim for damages due to a trustee failing to "materially comply with the provisions of this chapter" by failing to enjoin a foreclosure sale. RCW 61.24.127(1)(c). This recognition of a claim against the trustee supports the creation of a cause of action for breach of a trustee's duty of good faith. The legislature placed no explicit limitation on when a borrower or grantor may bring suit.

The majority reaches a different conclusion. Majority at 10. It agrees that RCW 61.24.127 recognizes a cause of action against a trustee but concludes the claim is available only after a trustee's sale. *See id.* It relies on RCW 61.24.127(2), which subjects the nonwaived claims to certain limitations. The limitations include, for example, the claim must be brought within two years of the "foreclosure sale or within the applicable statute of limitations for such claim, whichever expires earlier," and the claim cannot affect the validity of the foreclosure sale or cloud the title. RCW 61.24.127(2)(a), (c), (e). The majority relies on the fact that all of the limitations rely

on a past foreclosure sale to support its conclusion that the legislature intended a claim for damages only after a foreclosure sale.

I disagree with the majority's reasoning. Of course the limitations contemplate a completed trustee's sale—the legislature was specifically discussing the effects of failing to enjoin a sale on other claims that borrowers and grantors may bring. There is no indication that the legislature intended for this language to limit the availability of a claim for damages against a trustee for failing to materially comply with the DTA.[1]

There is also implicit support for allowing a claim before a trustee's sale is complete. We assume that the legislature is aware of the doctrine of implied cause of action, which is that the legislature "would not enact a statute granting rights to an identifiable class without enabling members of that class to enforce those rights." *Bennett*, 113 Wn.2d at 919-21. RCW 61.24.010 creates a duty and a corresponding right. "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). Here, the legislature did not explicitly provide a mechanism for protecting borrowers, beneficiaries, or grantors from a trustee who acts in bad faith.[2] Therefore, we may assume that the legislature intended

---

[1] Interestingly, the majority abandons its reasoning when discussing the Consumer Protection Act (CPA), chapter 19.86 RCW. RCW 61.24.127(1) treats violations of Title 19 RCW the same as a claim against a trustee for failing to materially comply with the DTA, and subsection (2) provides applicable limitations. The majority concludes that despite subsection (2)'s limitations, a CPA claim may be commenced absent a completed trustee's sale. Majority at 18.

[2] RCW 61.24.130 is not the mechanism. It allows borrowers, grantors, guarantors, or other people interested in a lien to enjoin a trustee sale "on any proper legal or equitable ground." RCW 61.24.130(1). However, it requires the applicant to pay the clerk of the court "the sums that would be due on the obligation secured by the deed of trust if the deed of trust was not

that there would be a judicial mechanism to enforce the statutory right. I have no reason to conclude that it intended this remedy only after a trustee's sale.

*Part 3: Implying a remedy is consistent with the purpose of the statute*

Implying a remedy is consistent with RCW 61.24.010(4)—which imposes a duty on the trustee to act in good faith toward borrowers, beneficiaries, and grantors—and is consistent with the purposes of the DTA. This implied remedy encourages trustees to act in good faith and allows early intervention for a breach of the duty.

A cause of action is also consistent with the overall objectives of the DTA. The objectives are that "'[t]he nonjudicial foreclosure process should remain efficient and inexpensive[;] . . . the process should provide an adequate opportunity for interested parties to prevent wrongful foreclosure[; and] the process should promote the stability of land titles.'" *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 104, 297 P.3d 677 (2013) (quoting *Cox v. Helenius*, 103 Wn.2d 383, 387, 693 P.2d 683 (1985)).

The majority opines that allowing a claim for damages to accrue as soon as a trustee violates the DTA would be inconsistent with the first objective articulated by *Schroeder* because the nonjudicial foreclosure will be rendered less efficient and more expensive than judicial foreclosure. Majority at 16-17. The majority opinion provides no reasoning for this conclusion, and I disagree. Allowing damage claims to accrue before a trustee sale should incentivize the trustee to conform to the requirements of

---

being foreclosed." *Id.* It does not appear that the legislature intended this to be the sole remedy for misdeeds by a trustee. The legislature did not make the trustee's duty contingent on the ability of borrowers to pay their arrears.

5

the law from the beginning of the foreclosure process. When nonjudicial foreclosures are pursued and completed lawfully, the process will ultimately be more efficient.

The remedy also supports the second purpose, which is to "'provide an adequate opportunity for interested parties to prevent wrongful foreclosure.'" *Schroeder*, 177 Wn.2d at 104 (quoting *Cox*, 103 Wn.2d at 387). Under RCW 6, a borrower, grantor, or guarantor may restrain a trustee's sale only if it pays the clerk of the court sums that would be due on the obligation if there was no foreclosure. If a borrower has insufficient resources to pay the sums due, the borrower will be unable to stop a wrongful trustee's sale. Allowing the cause of action before the sale encourages trustees to adhere to the required procedures.

All three parts of the implied cause of action test are satisfied. A cause of action against a trustee for violation of its duty of good faith should be available even in the absence of a completed trustee's sale. I disagree with the majority's answer to the first certified question.

I dissent in part and concur in part.

_____
Wiggins, J.

González, J.

Johnson, C.