2015 JUL 27 AM 10: 40



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VALMARI RENATA, | )<br>) No. 71402-3-I<br>) |
| Appellant, | )<br>) DIVISION ONE<br>) |
| v. | )<br>) |
| | ) |
| FLAGSTAR BANK, F.S.B., a federally | ) |
| chartered savings bank; NORTHWEST | ) |
| TRUSTEE SERVICES, INC., a | ) |
| Washington corporation; MORTGAGE | ) UNPUBLISHED OPINION |
| ELECTRONIC REGISTRATION | ) |
| SYSTEMS, INC, a Delaware corpora- | ) FILED: July 27, 2015 |
| tion and DOE DEFENDANTS 1-10, | ) |
| | ) |
| Respondents. | )<br>) |

BECKER, J. — The holder of a note is entitled to enforce it regardless of whether the holder is also the owner. Because respondent Flagstar Bank was the actual holder of the note given by the appellant, summary judgment was appropriate. We affirm.

On April 17, 2003, Capital Mortgage Corporation entered into a wholesale lending broker agreement with Flagstar. Under the agreement, Flagstar agreed to fund loans brought to it by Capital Mortgage so long as the loan documentation met Flagstar's underwriting standards and Capital Mortgage agreed to immediately indorse and deliver promissory notes to Flagstar.

On August 4, 2006, Valmari Renata executed a note in favor of Capital Mortgage in the amount of $200,800. The note bears an indorsement by Christina Butler—Capital Mortgage's then-President—to Flagstar.

On August 7, 2006, Renata executed a deed of trust, securing the note against real property located in Everett, Washington. The deed listed Joan Anderson of Flagstar as the trustee and the Mortgage Electronic Recording System (commonly referred to as "MERS") as the beneficiary.

On August 11, 2006, Flagstar received Renata's note. From this point on, Flagstar was the holder of the note. Flagstar indorsed the note in blank.

In December 2009, Renata fell into default on the loan.

On July 23, 2010, Northwest Trustee Services Inc., acting as Flagstar's agent, delivered a notice of default to Renata.

On August 11, 2010, Flagstar appointed Northwest Trustee the successor trustee.

On August 16, 2010, MERS assigned its interest in the deed of trust to Flagstar. MERS acted through its signing officer Sharon Morgan, who was also a Flagstar officer.

On September 7, 2010, Northwest Trustee recorded a notice of trustee's sale, setting the sale for December 10, 2010.

On December 9, 2010, Renata filed for bankruptcy. The scheduled sale did not occur.

On April 26, 2011, Renata's bankruptcy was dismissed.

2

On May 3, 2011, Northwest Trustee recorded an amended notice of trustee's sale, setting a new sale for June 10, 2011. The sale did not occur, and the property has not been sold.

On June 1, 2011, Renata filed a complaint against Flagstar, Northwest Trustee, and MERS. In it, Renata alleged wrongful foreclosure and a violation of the Consumer Protection Act, chapter 19.86 RCW. Renata also sought a declaratory judgment that the deed of trust is "illegal" and to quiet title.

On November 15, 2013, Flagstar and MERS filed a motion for summary judgment. In their motion, Flagstar and MERS explained why each cause of action should be dismissed.

> *First*, Plaintiff's wrongful foreclosure claim fails because the evidence shows that Flagstar may enforce the Note and Deed of Trust, [Northwest Trustee] is a valid Trustee authorized to carry out the foreclosure, and [Northwest Trustee] has complied with Washington's Deed of Trust Act.
> *Second*, Plaintiff is not entitled to declaratory judgment because Flagstar is a holder of the Note, and there is no basis for voiding the Deed of Trust simply because the Deed of Trust designated MERS as the beneficiary in an agency capacity for the Note holder.
> *Third*, Plaintiff's claim for violation of the Consumer Protection Act (CPA) fails because she cannot show an unfair or deceptive act, a public interest impact, injury, or causation.
> *Fourth*, Plaintiff's claim for quiet title fails because she has not paid off her loan, and Defendants are not claiming an ownership or possessory interest in Plaintiff's property.

Northwest Trustee joined this motion.

On November 30, 2013, Renata filed a memorandum in opposition to respondents' motion for summary judgment.

On December 13, 2013, the trial court granted the motion for summary judgment. Renata appeals.

3

## STANDARD OF REVIEW

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). A motion for summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). The nonmoving party may not rely on speculation, argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value. Wash. Fed. Sav. v. Klein, 177 Wn. App. 22, 311 P.3d 53 (2013), review denied, 179 Wn.2d 1019 (2014).

## ANALYSIS

### Morgan declaration

In the respondents' motion, they rely primarily on facts provided by the declaration of Sharon Morgan, an employee of Flagstar. Renata asserts that the trial court erred in admitting Morgan's declaration. Because the Morgan declaration provides the facts relied on by the motion and the court, this argument is addressed first.

In her declaration, Morgan states, among other things, that Flagstar has been in possession of the note since August 2006, Northwest Trustee acted as Flagstar's agent in transmitting the notice of default in July 2010, and Flagstar sent Northwest Trustee a beneficiary declaration, stating that Flagstar was the actual holder of the note in August 2010.

Normally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. Discover Bank v. Bridges, 154 Wn. App. 722, 726, 226 P.3d 191 (2010). However, the de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment ruling. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

To be considered on summary judgment, a supporting declaration must be made on personal knowledge and the facts set forth must be admissible in evidence.

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

CR 56(e). Washington courts consider the requirement of personal knowledge to be satisfied if the proponent of the evidence satisfies the business records statute. See Discover Bank, 154 Wn. App. at 726. A business record is admissible as competent evidence under certain, enumerated circumstances.

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020.

Morgan submitted two declarations in this case: the first on June 20, 2011, and the second on October 15, 2013. In her first declaration, Morgan stated that

the information was compiled by employees of Flagstar. She did not state she

had personal knowledge of the information therein.

> The information set forth in this declaration was assembled by employees of Flagstar, with the assistance of counsel, based on a review of Flagstar's records and from personnel in the appropriate offices and departments of said entity. The matters stated herein are true and correct to the best of my knowledge and belief, based upon records and information kept in the normal course of business available at this time.

In her second declaration, Morgan did state that she had personal knowledge of

the information contained in her declaration.

> I have the personal knowledge required to execute this declaration, and can confirm the accuracy of the information set forth herein. If sworn as a witness, I could competently testify to the facts contained herein.
>
> 3. In the regular and ordinary course of business, it is Flagstar's practice to make, collect, and maintain business records and documents related to any loan it originates, funds, purchases and/or services (collectively, "Business Records"). I have continuing access to the Business Records, and I am familiar with how each document attached to this declaration was retrieved and compiled. I have personally reviewed each document attached to this declaration.
>
> 4. I am familiar with Flagstar's record-keeping practices for its physical receipt and possession of the original Note for the Subject Loan, which is tracked by the vault document management system.

Renata asserts that Morgan's two declarations provide "contradictory

statements regarding her qualifications and the source of information she relies

upon." Renata is essentially arguing that because Morgan used different

language in each declaration, her statements were contradictory. That argument

fails. The fact that Morgan's second declaration does not use the same wording

as the first is not evidence that the statements are contradictory.

Morgan demonstrated the requisite personal knowledge by stating that she had personal knowledge of the way in which Flagstar's business records are created and maintained and that she reviewed each of the records that provided the information in her declaration. See Discover Bank v. Bridges, 154 Wn. App. 722, 226 P.3d 191 (2010).

In Discover Bank, debtors appealed from a judgment requiring them to pay their credit card debt. Relevant here is the debtors' argument that the trial court erred in considering business records and affidavits from three employees of a debt collection entity working on behalf of their creditor because "they do not contain sworn testimony by competent fact witnesses." Discover Bank, 154 Wn. App. at 726. This court rejected the debtors' argument.

> Here, [the declarants] collectively stated in their affidavits and declarations that (1) they worked for [the collections agency], (2) [two of the declarants] had access to the Bridgeses' account records in the course of their employment, (3) [the same two] made their statements based on personal knowledge and review of those records and under penalty of perjury, and (4) the attached account records were true and correct copies made in the ordinary course of business. The trial court properly considered the affidavits and declarations, and it did not abuse its discretion by considering the business records.

Discover Bank, 154 Wn. App. at 726 (footnote omitted).

Like the declarants in Discover Bank, Morgan declared under penalty of perjury that (1) she was an employee of Flagstar, (2) she had personal knowledge of her company's practice of maintaining business records, (3) she had personal knowledge from her own review of records related to Renata's note and deed of trust, and (4) the records she attached were true and correct copies

7

of documents made in the ordinary course of business at or near the time of the transaction.

Renata does not identify any genuine issue of material fact as to Morgan's qualifications, her statements, or the authenticity of the attached documents. Renata asserts that Morgan presents information "this Court cannot reliably verify." But she cites no authority, and we have found none, suggesting that a declaration is inadmissible unless a court can independently verify the information it contains.

We conclude that the trial court did not err by considering the declaration and attached business records.

Declaratory judgment

Renata asserted a claim for declaratory judgment, asking the court to find (1) that the subject deed of trust was void because it named MERS the beneficiary, (2) MERS' assignment of its beneficial interest in the deed of trust was void as a matter of law, and (3) Flagstar was not the holder or the owner of the note. Renata asked that the nonjudicial foreclosure process be "declared unlawful and permanently enjoined."

In their motion for summary judgment, the respondents argued that the trial court should dismiss Renata's claim for declaratory judgment because (1) no court has declared a deed of trust "void" for naming MERS as a beneficiary, (2) MERS had authority to assign its interest in the note to Flagstar, and (3) Flagstar was a valid holder of the note.

8

Renata fails to cite any authority, and we have found none, to support an argument that deeds of trust that name MERS as the beneficiary are void.

Similarly, no authority supports Renata's assertion that an invalid assignment from MERS supports a declaratory judgment and permanent injunction prohibiting a trustee's sale.

On appeal, Renata adds that the deed of trust is "deficient" because no evidence in the record supports a finding that the original trustee named in the deed—Joan Anderson of Flagstar—met the qualifications of RCW 61.24.010. Renata appears to believe that this too renders the deed void. Renata cites no authority, and we have found none, that supports a finding that an attempted foreclosure is doomed by the designation of an unqualified original trustee in the deed of trust. Also, to the extent Renata suggests that Joan Anderson was unqualified because she was an employee of the beneficiary, that is no longer the law. Cox v. Helenius, 103 Wn.2d 383, 390, 693 P.2d 683 (1985), citing LAWS OF 1975, 1st Ex. Sess., ch. 129, §2 (amending the deed of trust act to allow an employee agent or subsidiary of a beneficiary to serve as trustee).

This court has persuasively and comprehensively rejected Renata's argument that an entity must be both the note holder and the owner to enforce it. In Trujillo, we held that "it is the status of holder of the note that entitles the entity to enforce the obligation. Ownership of the note is not dispositive." Trujillo v. Nw. Tr. Servs., Inc., 181 Wn. App. 484, 498, 326 P.3d 768 (2014), review granted, 182 Wn.2d 1020 (2015). In a related argument that Flagstar did not have "legal possession" of the note, Renata relies on article 9 of the Uniform

Commercial Code, which controls security interests in notes. As we also held in Trujillo, nonjudicial foreclosure proceedings are not subject to article 9. Trujillo, 181 Wn. App. at 502-04; RCW 62A.9A-109(11); RCW 62A.9A-109, cmt. 7 (security interest in obligation secured by nonarticle 9 transaction). We adhere to our opinion in Trujillo.

Renata argues that Flagstar was not the holder of the note because Capital Mortgage's indorsement to Flagstar was forged and therefore ineffective. A declaration from the apparent indorser states that "the signature that appears in the endorsement is not mine."

This is not proof that the indorsement was ineffective. This is only evidence that the signature was not that of the apparent indorser.

Under the Uniform Commercial Code, unauthorized signatures are ineffective unless ratified.

> Unless otherwise provided in this Article or Article 4, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this Article.

RCW 62A.3-403(a). For a principal to be charged with the unauthorized act of its agent by ratification, it must act with full knowledge of the facts or accept the benefits of the act or intentionally assume the obligation imposed without inquiry. Swiss Baco Skyline Logging, Inc. v. Haliewicz, 18 Wn. App. 21, 32, 567 P.2d 1141 (1977).

Butler's declaration fails to create a genuine issue of material fact because she does not state that she did not authorize another person to indorse the note

10

on her behalf, a common practice. But even if she had stated she did not authorize another person to indorse on her behalf, Capital Mortgage ratified the indorsement when it complied with its contractual duty owed to Flagstar by intentionally delivering the indorsed note to Flagstar and accepting payment.

Renata asserts that a material issue of fact remains as to whether the indorsement was forged. "Indeed, a trier of fact could reasonably conclude that where the endorsement states that it is the signature of Ms. Butler, but she refutes its authenticity, the signature is a forgery under RCW 62A.1-201(43)." But if Capital Mortgage ratified the signature, the indorsement was effective even if Butler's signature was forged. We conclude that the indorsement was ratified by Capital Mortgage and Flagstar was the holder of the note. Under Trujillo, Flagstar was entitled to enforce the note.

The trial court properly dismissed Renata's claim for declaratory judgment.

<u>Wrongful foreclosure</u>

The deed of trust act does not create an independent cause of action for monetary damages based on alleged violations of its provisions where, as here, no foreclosure sale has been completed. Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 417, 334 P.3d 529 (2014). But, under appropriate factual circumstances, violations of the deed of trust act may be actionable under the Consumer Protection Act, even where no foreclosure sale has been completed. Frias, 181 Wn.2d at 417. We consider the alleged violations in that context.

11

Consumer Protection Act

To prevail on an action for damages under the Consumer Protection Act, the plaintiff must establish (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). Whether a particular action gives rise to a Consumer Protection Act violation is reviewable as a question of law. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

MERS' involvement

Renata asserts that an unfair or deceptive act or practice is presumed where MERS is involved, citing Bain v. Metro. Mortg. Group, Inc., 175 Wn.2d 83, 115-20, 285 P.3d 34 (2012). That is not the law. In Bain, our Supreme Court explicitly held that "the mere fact MERS is listed on the deed of trust as a beneficiary is not itself an actionable injury." Bain, 175 Wn.2d at 120. Renata points to the mere fact that MERS was listed as a beneficiary, which under Bain is not enough.

Trustee's violation of its duty of good faith

A trustee's violation of its duty of good faith may be actionable as a violation of the Consumer Protection Act. See Frias, 181 Wn.2d at 417.

While lenders, servicers, and their affiliates appoint trustees, a trustee is not their agent. "The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor." RCW 61.24.010(4). In a judicial foreclosure

12

action, an impartial judge of the superior court acts as the trustee and the debtor has a one-year redemption period. RCW 61.12.040; RCW 4.12.010; RCW 6.23.020(1). In a nonjudicial foreclosure, by contrast, the trustee undertakes the role of the judge as an impartial third party who owes a duty to both parties to ensure that the rights of both the beneficiary and the debtor are protected. Cox, 103 Wn.2d at 389.

First, Renata argues that Northwest Trustee breached the duty of good faith by failing to investigate Sharon Morgan's "conflict of interest," allegedly arising out of Morgan's assignment of MERS' interest in the deed to Flagstar while acting as both a signing officer of MERS and an officer of Flagstar. MERS has no employees and takes all action through its signing officers who are also officers of its member entities. Bain, 175 Wn.2d 83. Renata cites no authority for her assertion that Morgan had a conflict of interest. We reject Renata's conclusory assertion that Northwest Trustee had a duty to investigate under these circumstances.

Second, Renata argues Northwest Trustee breached the duty of good faith by relying on Flagstar's beneficiary declaration without investigating whether Morgan truly had authority to execute the assignment on behalf of MERS. This argument lacks merit and is unsupported by any relevant authority.

Third, Renata asserts that Northwest Trustee violated the duty of good faith by engaging in a "systematic disregard" of statutory notarization requirements found in chapter 42.44 RCW. She refers to the notice of trustee's sale, which has an effective date of April 29, 2011, but was not notarized until

13

May 2, 2011. Renata argues that these facts give rise to a reasonable inference that the document was not signed in the presence of the notary, in violation of Washington law. In support of this assertion, Renata relies on Klem v. Washington Mutual Bank, 176 Wn.2d 771, 295 P.3d 1179 (2013).

Klem does not support her assertion. In that case, Klem presented evidence that the trustee falsely predated notarizations of trustee signatures on notices of sale in order to expedite foreclosures unfairly. Klem, 176 Wn.2d at 777-78. Northwest Trustee persuasively explains that the effective date on a notice of sale is not the same as the signing date. Rather, it refers to the effective date of the amount due to reinstate, identified on that portion of the notice totaling the monthly payments in arrears along with late charges and the lender's and trustee's fees and costs. The effective date is unrelated to the date of signature and notarization. The fact that the notice listed an effective date that was earlier than the date of the notarization of the signature does not suggest that Northwest Trustee disregarded statutory notarization requirements in this case, let alone systematically as occurred in Klem.

Fourth, Renata asserts Northwest Trustee violated the duty of good faith by serving two notices of foreclosure that failed to identify the beneficiary of the deed of trust and owner of the obligation. RCW 61.24.040(2) requires trustees to send a notice of foreclosure with the notice of trustee's sale and includes a form. The first paragraph of the form notice asks the trustee to list the name of the beneficiary and owner of the obligation.

14

As we noted in Trujillo, RCW 61.24.040 directs only that a notice of foreclosure must be in "substantially" the statutory form. RCW 61.24.040(1)(f), (2). Therefore, contrary to Renata's assertion, a trustee does not fail to strictly comply with the terms of the act by not strictly following the statutory form language in the notice of foreclosure. The accompanying notices of trustee's sale informed Renata of the date of the sale, the title of the entity enforcing the obligation, the amount needed to cure the default, the entity she should contact to cure her default, and her right to contest default. The notices of trustee's sale identified Flagstar as the beneficiary of the deed of trust. We conclude that taken together, the notices substantially complied with the statutory form. And in any event, Renata has not shown that she was harmed.

Fifth, Renata argues that Northwest Trustee violated the duty of good faith by misleadingly describing the original deed of trust. Trustees are statutorily required to include a description of the original deed of trust in the notice of trustee's sale. RCW 61.24.040(1)(f). Northwest Trustee's description identified MERS as the original beneficiary, succeeded by Flagstar. Renata claims that this reference to MERS made it impossible for her to identify the true and lawful holder of her loan. We disagree. The Notice of Trustee's Sale did not disguise the fact clearly stated in the notice of default that Flagstar was the beneficiary.

We conclude that Northwest Trustee did not violate its duty of good faith. Because Renata has failed to establish an unfair or deceptive act or practice, we need not consider whether she has established the remaining elements of a Consumer Protection Act claim.

15

Renata's claim under the Consumer Protection Act was properly dismissed.

Quiet title

Through the same complaint, Renata seeks to quiet title in the property subject to the deed of trust. "Plaintiff's ownership interest may be subject to other liens, however for the reasons set forth above the subject deed of trust was irreparably severed from any underlying obligation." As a result, Renata asserts that "any security interest on the property arising from the deed of trust" is "null and void."

The respondents asserted no claim of ownership in Renata's property. Since quiet title actions are designed to resolve competing claims of ownership or the right to possess property, a quiet title action cannot survive where, as here, there is no competing claim. Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001).

We conclude the trial court properly dismissed Renata's action to quiet title.

Additional discovery

Renata claims that the trial court erred by denying her request to continue discovery under CR 56(f).

We review a trial court's denial of a CR 56(f) motion for abuse of discretion. Qwest Corp. v. City of Bellevue, 161 Wn.2d 353, 369, 166 P.3d 667 (2007).

Where the party opposing summary judgment cannot, for reasons stated, present essential facts to justify his or her opposition, courts may order a continuance to permit additional discovery.

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

CR 56(f). A party seeking such a continuance must provide an affidavit stating what evidence it seeks and how this evidence will raise an issue of material fact precluding summary judgment. Durand v. HIMC Corp., 151 Wn. App. 818, 214 P.3d 189 (2009), review denied, 168 Wn.2d 1020 (2010). The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence; (2) the requesting party does not indicate what evidence would be established by further discovery; or (3) the new evidence would not raise a genuine issue of fact. Qwest, 161 Wn.2d at 369, quoting Butler v. Joy, 116 Wn. App. 291, 299, 65 P.3d 671, review denied, 150 Wn.2d 1017 (2003).

Renata did not file an affidavit. She made her request for a continuance at the end of her response to the respondents' motion for summary judgment. There, she stated that she needed a continuance to conduct depositions under CR 30(b)(6) to address "the issue of authorization" and "the issues surrounding the forged endorsement." Renata does not specifically identify the evidence she believes would be uncovered. And Renata does not provide a good reason for her delay in obtaining this evidence.

17

Under these circumstances, we find that the trial court did not abuse its discretion by denying Renata's request for a CR 56(f) continuance.

Affirmed.

Becker, J.

WE CONCUR:

Leach, J.

Verellen, J.