# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SANDRA CABAGE, | No. 45953-1-II |
| Appellant, | |
| v. | |
| NORTHWEST TRUSTEE SERVICES, INC., PNC MORTAGE, a division of PNC BANK, N.A. and DOE DEFENDANTS 1 through 20, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Sandra Cabage sued the servicer on her home loan, PNC Mortgage, Inc. and the successor trustee, Northwest Trustee Services, Inc. for initiating nonjudicial foreclosure proceedings against her. She appeals the superior court's summary judgment dismissal of her claims against them for violations of the Deed of Trust Act (DTA)[1] and Consumer Protection Act (CPA),[2] and intentional and negligent misrepresentations. She also appeals the superior court's order and judgment of judicial foreclosure.

We hold that, as a matter of law, Cabage cannot pursue a DTA claim for monetary damages against PNC or NWTS because she did not suffer a nonjudicial foreclosure and we affirm the superior court's dismissal of her DTA claims. We also hold that there are genuine issues of material fact as to (1) PNC's status as the noteholder because the beneficiary designation was ambiguous, (2) PNC's authority to appoint NWTS as the successor trustee for nonjudicial

---

[1] Deed of Trust Act, ch. 61.24 RCW.

[2] Consumer Protection Act, ch. 19.86 RCW.

foreclosure, (3) PNC's authority to participate in mediation and whether it did so in good faith, and (4) whether NWTS met its duties to Cabage. Thus, the trial court erred in granting summary judgment dismissal of Cabage's CPA and misrepresentation claims against PNC and NWTS. We also hold that the superior court erred in entering an order and judgment of judicial foreclosure.

We further hold that whether Cabage suffered injury is a question of fact, but that she cannot recover damages for time off from work, relocation expenses, or attorney fees and costs for bringing the CPA claim and we affirm the trial court's ruling as to these claimed damages. But if she prevails on her CPA claim, Cabage may recover mediation expenses and attorney fees and costs for investigating PNC's and NWTS's authority to conduct nonjudicial foreclosure. Accordingly, we affirm in part, reverse in part, remand, and direct the trial court to stay the sheriff's sale pending further proceedings consistent with this opinion. Because we remand, we decline to award fees and costs to NWTS.

FACTS

I. THE PROMISSORY NOTE AND DEED OF TRUST

On March 6, 2006, Cabage obtained a loan from National City Mortgage, a division of National City Bank of Indiana, to purchase a home. She signed a $212,000 promissory note, secured by a deed of trust[3] on her home. The note was payable to National City Mortgage as the lender; the deed of trust listed National City Mortgage, a division of National City Bank of

---

[3] A deed of trust "'is a form of a mortgage.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92, 285 P.3d 34 (2012) (quoting 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASH. PRAC.: REAL ESTATE: TRANSACTIONS § 17.3, at 260 (2d ed. 2004)).

Indiana,[4] as the lender and beneficiary. The note and deed of trust were recorded with the Pierce County Auditor on March 9, 2006. Cabage made loan payments until April 2009, when she lost her job; she then sought a loan modification from PNC, who serviced her loan at that time. She defaulted on her loan in May 2009 and later commenced bankruptcy proceedings.

A. The Mergers of National City Bank of Indiana and National City Mortgage into PNC

Through a series of mergers, National City Bank of Indiana and National City Mortgage merged into National City Bank on October 1, 2008, and National City Bank then merged into PNC on November 6, 2009. Timothy R. Justice, Mortgage Officer for PNC, explained the mergers as follows: On April 11, 2006, National City Mortgage, the original lender, endorsed Cabage's note in blank and assigned the deed of trust to National City Mortgage Company. On May 23, 2006, National City Mortgage Company then sold Cabage's loan to Goldman Sachs Mortgage Company.

On January 1, 2006, National City Mortgage Company, the loan servicer, entered into a restated flow seller's warranties and servicing agreement (servicing agreement) with Goldman Sachs for the sale and servicing of certain loans, including Cabage's loan. A separate assignment, assumption and recognition agreement, dated July 28, 2006, transferred the loan into a securitization trust and documented the sale of the loans. This document named JPMorgan Chase Bank, National Assoc. as the master servicer, U.S. Bank National Assoc. as the trustee, and Deutsche Bank National Trust Co. and Wells Fargo Bank, National Assoc. as the custodians.

---

[4] National City Mortgage is a division of National City Bank of Indiana, and National City Mortgage Company is a subsidiary of National City Bank of Indiana.

Dorothy Thomas, PNC's corporate representative, testified that in October 2008, Goldman Sachs transferred Cabage's loan into a securitization trust; the master servicer of the securitized trust at that time was the Bank of New York-Mellon. National City Mortgage Company remained the loan servicer on Cabage's loan until November 6, 2009, when it merged into PNC,[5] who then became the new loan servicer[6] on Cabage's loan.

B. The Chapter 7 Bankruptcy

On November 20, 2009, Cabage filed for chapter 7 bankruptcy protection. In her schedules, Cabage listed National City Mortgage as the secured creditor of the loan. In her bankruptcy, she did not reaffirm the loan. In December, when she was unable to secure a loan modification, she moved into a house rented by a friend.

On February 5, 2010, PNC moved for relief from Cabage's bankruptcy stay on the grounds that it was the continuing noteholder. On March 8, the bankruptcy court granted PNC's motion and permitted PNC to enforce the deed of trust on the property. Cabage did not object to PNC's motion or challenge PNC's security interest on her property.

C. The Nonjudicial Foreclosure Proceedings

In June 2010, PNC determined that Cabage's bankruptcy discharge of her loan precluded her from receiving a loan modification, and PNC referred the loan to NWTS to assist in nonjudicial

---

[5] According to Justice's declaration, National City Bank of Indiana and National City Mortgage Company and PNC had contemporaneous servicing notes reflecting actions taken by their staff and communications about Cabage's loan.

[6] A mortgage loan servicer collects mortgage payments on behalf of other entities, including securitized trusts on loans which are secured by real property in the state of Washington.

foreclosure on her property. On or about June 18, as a result of Cabage's default on the secured loan, NWTS sent a Notice of Default to Cabage. On or about June 25, PNC executed a sworn beneficiary declaration stating that it was the actual noteholder. Jeff Stenman, NTWS's corporate representative, testified that he received the beneficiary declaration on July 6 and relied upon it to confirm the noteholder before he issued the Notice of Trustee's Sale. On July 7, an Appointment of Successor Trustee, vesting NWTS with the powers of the original trustee, was recorded with the Pierce County Auditor. On July 22, a Notice of Trustee's Sale was recorded with the Pierce County Auditor, setting a sale date of October 29. That sale did not occur.

This first nonjudicial foreclosure attempt against Cabage's property was based on two recorded documents in Pierce County, (1) An Assignment of Deed of Trust recorded on July 31, 2006, representing that the interest in Cabage's Deed of Trust was assigned from National City Mortgage to National City Mortgage Company, and (2) an Assignment of Deed of Trust recorded in Pierce County on August 16, 2006, representing that the interest in the Deed of Trust was assigned from National City Mortgage to National City Mortgage Company. The record before us does not reveal an assignment of Cabage's Deed of Trust to PNC that was recorded in Pierce County.

In October 2011, Cabage moved back into her residence and sought another loan modification. On November 7, NWTS commenced a second nonjudicial foreclosure attempt and issued a new Notice of Trustee's Sale, but this sale did not occur either. The new Notice of Trustee's Sale document stated that the beneficiary was National City Mortgage, who through a series of mergers had merged into PNC as of November 6, 2009.

II. THE FORECLOSURE FAIRNESS ACT MEDIATION WITH PNC AND NWTS

In early 2012, after consulting an attorney, Cabage sought mediation under the Foreclosure Fairness Act (FFA), RCW 61.24.163. PNC and NWTS stayed the pending nonjudicial foreclosure sale. Before the FFA mediation, PNC internally calculated the net present value of the property,[7] assessed Cabage's eligibility for a loan modification under both the Home Affordable Modification Program (HAMP) and its internal loan modification programs, and determined that she was ineligible for a loan modification.

A. The Beneficiary Declaration

PNC provided the beneficiary declaration in its mediation materials. PNC's authorized officer, Kaycee M. Kleehammer, signed and dated the beneficiary declaration on June 25, 2010. The beneficiary declaration's language identified PNC Bank as the "actual holder" of the note stating, "PNC Bank, National Association sbm National City Mortgage a division of National City Bank of Indiana nka National City Bank is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." Clerk's Papers (CP) at 409.

---

[7] This assessment is designed to determine the difference between the anticipated recovery for the owner of the loan in the event of a loan modification and in the event of a foreclosure. Under RCW 61.24.163, two net present value tests can be used during mediation and the two internal summary calculations provided by PNC did not qualify.

B. The FFA Mediation

PNC attended the May 24, 2012, mediation with its attorney and PNC's negotiator. During mediation, PNC explained that, under its policy applicable to Cabage's loan under the servicing agreement, it did not consider Cabage eligible for a loan modification because she had not reaffirmed her debt to PNC during her chapter 7 bankruptcy. PNC also explained that it was not required to disclose who made this decision, that an investor[8] (later identified as the Bank of New York-Mellon)[9] owned the loan, but that PNC had complete authority to make all decisions regarding the loan.[10] The mediator certified that both parties acted in good faith and that the net present value of the modified loan would not exceed the anticipated net recovery at foreclosure.

III. Cabage's Complaint

On June 4, 2012, Cabage filed a complaint against NWTS, PNC, and "Doe Defendants 1 through 20" alleging violations of the DTA, CPA, and intentional and negligent misrepresentations. Cabage alleged in her complaint that (1) PNC was never a noteholder under the DTA, (2) even if PNC had obtained authority to enforce the terms of the note under RCW 62A.3-301, PNC never provided proof to her, and the DTA does not authorize a person other than the noteholder to initiate nonjudicial foreclosure, appoint a successor trustee, or participate in

---

[8] RCW 61.24.163(5)(j) requires that if a loan modification denial is predicated upon investor guidelines, it is required to provide the documentation that prevents the modification.

[9] Cabage later discovered that the Bank of New York-Mellon was the master servicer of the securitized trust that owned her loan.

[10] RCW 61.24.163(7)(b)(ii) requires the person who participates in the mediation on behalf of the beneficiary to have full authority to make a decision on loan modification.

7

mediation, and (3) the beneficiary declaration was ambiguous and did not comply with the DTA. She also alleged emotional damages as a result of losing her home, costs incurred with moving in and out of the property, and attorney fees.

IV. PNC'S COUNTERCLAIM AND PNC'S AND NWTS' MOTIONS FOR SUMMARY JUDGMENT

On November 5, 2012, having ended its attempts to nonjudicially foreclose on the property, PNC filed a counterclaim against Cabage for judicial foreclosure. PNC and NWTS moved for summary judgment and dismissal of all of Cabage's claims. The superior court ruled that PNC was the noteholder and beneficiary and granted summary judgment dismissal of all claims in favor of PNC and NWTS. After granting summary judgment, the superior court entered an order of non-recourse judgment and decree of foreclosure against Cabage based on its conclusion that PNC was the noteholder of the promissory note executed by Cabage in 2006, and ordered a sheriff's sale of the property.[11] Cabage appealed.

ANALYSIS

Cabage argues that there are genuine issues of material fact as to whether (1) PNC or NWTS complied with the DTA, (2) their alleged deceptive acts violated the CPA, (3) their actions and statements constitute misrepresentations, (4) she can prove a compensable injury under the CPA, and (5) the superior court erred in dismissing her claims and ordering the judicial foreclosure and sale of her home.

_____

[11] The sheriff's sale was stayed pending this appeal.

We hold that (1) the superior court did not err in dismissing Cabage's DTA claim, and genuine issues of material fact preclude summary judgment on the (2) CPA claims, (3) misrepresentation claims, and (4) recoverable damages. We further hold that the superior court erred in entering an order and judgment of judicial foreclosure.

## I. STANDARD OF REVIEW

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. *Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 649, 336 P.3d 1112 (2014) *cert. denied*, 135 S. Ct. 1904, 191 L. Ed. 2d 765 (2015). Summary judgment is proper if the pleadings show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). A material fact is one that affects the outcome of the litigation. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

We perform the same inquiry as the trial court, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in the favor of the nonmoving party. *Elcon Constr.*, 174 Wn.2d 164. Summary judgment is appropriate if, after considering the evidence, reasonable persons could reach only one conclusion. *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 703, 335 P.3d 416 (2014).

## II. DEED OF TRUST ACT (DTA) CLAIMS

The Washington Supreme Court recently held that a plaintiff could not maintain an independent claim for monetary damages under the DTA in the absence of a completed nonjudicial foreclosure sale of the property. *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 433, 334 P.3d 529 (2014). Although PNC and NWTS twice attempted nonjudicial foreclosure against Cabage's property, the trustee sales were cancelled and a nonjudicial foreclosure never occurred.

And although the superior court subsequently entered a decree of judicial foreclosure, the foreclosure was stayed pending this appeal. We hold that, under *Frias*, Cabage cannot, as a matter of law, bring a DTA claim for monetary damages against PNC or NWTS, and we affirm the superior court's dismissal of those claims.

### III. CONSUMER PROTECTION ACT (CPA) CLAIMS

A claim under the CPA based on violations of the DTA must meet the same requirements applicable to any other CPA claim. *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 775, 785, 336 P.3d 1142 (2014). To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that affects the public interest, (4) injury to the plaintiff's business or property, and (5) the injury was caused by the unfair deceptive act or practice. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986); *See* RCW 19.86.020.

The Washington Supreme Court recently held that a homeowner may bring a CPA claim based upon another party's representation that it was a beneficiary with the power to appoint a trustee to conduct a nonjudicial foreclosure on the homeowner's property. *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 89, 285 P.3d 34 (2012). The court held that only the actual holder of the promissory note or other instrument may be a lawful beneficiary with the power to appoint a trustee with a nonjudicial foreclosure on real property. *Bain*, 175 Wn.2d at 89, 110. Therefore, a homeowner may bring a CPA claim against an unlawful beneficiary if they can establish the required five elements. *Bain*, 175 Wn.2d at 110, 119-20; *see also Frias*, 181 Wn.2d at 430.

To support her CPA claim, Cabage relies on *Lyons* to argue that the beneficiary declaration is ambiguous and does not comply with the DTA. NWTS distinguishes this case from *Lyons*

asserting that PNC, whom the evidence identifies as National City Mortgage's successor by merger, is the lawful beneficiary and possesses the legal authority to foreclose on the property.

We hold that, under *Lyons,* the beneficiary designation language was ambiguous. We also hold that there are genuine issues of material fact as to (1) PNC's status as noteholder, (2) PNC's authority and whether PNC participated in good faith in mediation, and (3) whether NWTS met its duties to Cabage which preclude summary judgment on the CPA claims.

A. Cabage's CPA Claim Against PNC

Nonjudicial foreclosures are controlled by RCW 61.24.030(7), which states,

> (a) That, for residential real property, before the notice of trustee's sale is recorded, transmitted, or served, the *trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust*. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligation secured by the deed of trust shall be sufficient proof as required under this subsection.
>
> (b) Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.
>
> . . . .

RCW 61.24.030(7)(a)(b) (emphasis added).

Here, the beneficiary declaration provided,

> PNC Bank, National Association sbm National City Mortgage a division of National City Bank of Indiana nka National City Bank is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation.

CP at 368. PNC and NWTS argue that the beneficiary declaration complied with the DTA by relying upon RCW 61.24.030(7)'s language requiring the trustee to have proof that the beneficiary is the noteholder. However, our Supreme Court recently held in two cases that ambiguous language in the beneficiary declaration precludes summary judgment. *See Lyons v. U.S. Bank Nat.*

*Ass'n*, 181 Wn.2d 775, 336 P.3d 1142 (2014); *see also Trujillo v. Northwest Tr. Servs.*, No. 90509-6 (Wash. Aug. 20, 2015).

In *Trujillo*, a borrower sued Northwest Trustee, the successor trustee under a deed of trust, arguing that the trustee breached its duty of good faith under the DTA when it attempted a nonjudicial foreclosure on the borrower's property. *Trujillo*, slip op. at 5. While Division One of our Court of Appeals held that the trustee was entitled to rely on the beneficiary declaration of Wells Fargo Bank for the authority to schedule a trustee's sale of the property, that the declaration satisfied the requirements of RCW 61.24.030(7)(a), our Supreme Court reversed on the basis of its decision in *Lyons*. *Trujillo*, slip op. at 6, 11-12.

In *Lyons*, the signatory of a promissory note secured by a deed of trust brought suit against the trustee, Northwest Trustee, for DTA and CPA violations arising out of Northwest Trustee's attempted nonjudicial foreclosure. *See Lyons*, 181 Wn.2d at 779-82. In *Lyons*, Northwest Trustee attempted nonjudicial foreclosure based on its purported ownership of the note through the beneficiary declaration and its attendant right to enforce[12] the borrower's obligation. *See* 181 Wn.2d at 781-82. The beneficiary declaration in *Lyons* reads, "Wells Fargo Bank, NA, as Trustee for Soundview Home Loan Trust 2006–WFI, is the actual holder of the promissory note

---

[12] Under the Uniform Commercial Code (UCC), ch. 62A.3 RCW, RCW 62A.3-301 controls who may enforce a negotiable instrument,

> "Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to RCW 62A.3-309 or 62A.3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

RCW 62A.3-301.

or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." 181 Wn.2d at 780 (internal quotation marks omitted).

In *Lyons*, the court held that, on its face, this language was too ambiguous to grant summary judgment in favor of the alleged noteholder and that the successor trustee, Northwest Trustee, could not simply rely on the language in the declaration to obtain summary judgment against the borrower. 181 Wn.2d at 790, 791. The court further held that, although the beneficiary declaration was ambiguous and noncompliant with RCW 61.24.030(7)(a), Northwest Trustee could still prove that Wells Fargo was the noteholder through other means. *Lyons*, 181 Wn.2d at 791. However, because the beneficiary declaration was ambiguous, and the only means upon which Northwest Trustee relied when it obtain summary judgment against the borrower, it was a material issue of fact as to whether Wells Fargo was the actual noteholder and summary judgment was improper. *Lyons*, 181 Wn.2d at 791.

Here, the relevant language in the beneficiary declaration is identical in all material respects to the language in both *Lyons* and *Trujillo*. It reads, "PNC Bank, National Association sbm National City Mortgage a division of National City Bank of Indiana nka National City Bank is the actual holder of the promissory note or other obligation evidencing the above-referenced loan or has requisite authority under RCW 62A.3-301 to enforce said obligation." CP at 368; *see Lyons*, 181 Wn.2d at 780. Under *Lyons*, the beneficiary declaration here is ambiguous under the "actual holder of the note" language or the "requisite authority under RCW 62A.3-301" language. CP at 368. And like the court in *Trujillo*, the superior court here did not have the benefit of either

13

*Frias* or *Lyons* when it issued its ruling. Because the beneficiary declaration is ambiguous, that ambiguity must be resolved by a fact finder. *See Lyons*, 181 Wn.2d at 791-92.

If PNC was not the noteholder when it commenced nonjudicial foreclosure proceedings in June 2010 against Cabage's property, then there are genuine issues of material fact as to (1) whether PNC had the authority to appoint NWTS as the successor trustee, (2) whether PNC had the authority to participate in the FFA mediation, and (3) whether PNC participated in good faith. PNC fails to show that it is entitled to judgment as a matter of law on the CPA claims (based on the alleged DTA violations). *Failla*, 181 Wn.2d at 649. Thus, we reverse the superior court's summary judgment ruling as to Cabage's CPA claims against PNC. We now address NWTS's obligations under the CPA.

B. Cabage's CPA Claim Against NWTS

A trustee is not merely an agent for the lender or the lender's successors, but has obligations to all of the parties to the deed, including the homeowner. *Bain*, 175 Wn.2d at 93; RCW 61.24.010(4) ("The trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."). As fiduciary for both the noteholder and mortgagee, a trustee has a duty to act impartially between both parties. *Cox v. Helenius*, 103 Wn.2d 383, 389, 693 P.2d 683 (1985). A trustee's failure to act impartially between noteholders and mortgagees, in violation of the DTA, can support a claim for damages under the CPA. *Lyons*, 181 Wn.2d at 787.

NWTS had an independent duty to act impartially toward both Cabage and PNC. *See Lyons*, 181 Wn.2d at 787; RCW 61.24.010(4). NWTS's corporate representative admitted that it did not independently verify PNC's status as noteholder but relied on the beneficiary declaration

signed by PNC that it was the noteholder and, upon receipt of that declaration, on July 6, 2010, NWTS issued a Notice of Trustee Sale.

The record shows that on March 6, 2006, National City Mortgage approved Cabage's loan to purchase a home. Cabage signed a promissory note, secured by a deed of trust on the property. On April 11, 2006, National City Mortgage endorsed the original note in blank and transferred the deed of trust to National City Mortgage Company. National City Mortgage then sold Cabage's loan to Goldman Sachs on May 23, 2006, and Goldman Sachs subsequently transferred Cabage's loan into a securitized trust. On October 1, 2008, National City Mortgage merged into National City Bank but, by that time, National City Mortgage had already sold Cabage's loan to Goldman Sachs. The record does not clearly show that National City Mortgage physically possessed Cabage's original note at the time it sold her loan to Goldman Sachs on May 23, 2006. Nor does the record clearly show whether or when Goldman Sachs physically possessed the original note at the time that Goldman Sachs transferred the note into a securitized trust.

The trust agreement identified U.S. Bank National Association as the trustee and JPMorgan Chase as the master servicers. The custodial agreement identified JPMorgan Chase as the initial custodian. The assumption agreement documented the sale of the loans to Goldman Sachs and National City Mortgage's role as the servicer, and identified Deutsche Bank National Trust Company and Wells Fargo Bank as the custodians of the note.

Although the record clearly shows that PNC became the servicer of Cabage's note in November 2009 and remained so during the relevant period, the physical location of the original note or who was the noteholder is not clear. The record also does not clearly show the dates that the custodians, Wells Fargo or Deutsche Bank, physically held Cabage's note.

Thus, viewing the facts in the light most favorable to the nonmoving party, we hold that NWTS failed to show that it is entitled to judgment as a matter of law on the CPA claims because there are genuine issues of material fact as to who held the original note and when, and whether NWTS fulfilled its fiduciary obligations to Cabage before initiating nonjudicial foreclosure proceedings against her. Thus, we reverse the superior court's summary judgment dismissal of her CPA claims against NWTS.

## IV. INTENTIONAL AND NEGLIGENT MISREPRESENTATION CLAIMS

The superior court also dismissed Cabage's claims that PNC and NWTS intentionally and negligently misrepresented[13] the identity of the noteholder and misrepresented its authority to nonjudicially foreclose on Cabage's property. The superior court dismissed Cabage's

---

[13] To recover for intentional misrepresentation, a plaintiff must prove

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon the representation; and (9) damages suffered by the plaintiff.

*Carlile v. Harbour Homes, Inc.*, 147 Wn. App. 193, 204-05, 194 P.3d 280 (2008) (quoting *West Coast, Inc. v. Snohomish County*, 112 Wn. App. 200, 206, 48 P.3d 997 (2002)).

To recover for negligent misrepresentation, a plaintiff must prove by clear, cogent, and convincing evidence that

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

*Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). The plaintiff must also not have been negligent in relying on the representation. *Ross*, 162 Wn.2d at 500.

misrepresentation claims[14] for the same reason that it dismissed her CPA claims–that the nonjudicial foreclosure attempts were not successful and that she failed to show an injury.

Although a lack of a successful nonjudicial foreclosure precludes recovery of monetary damages for a DTA claim, it does not preclude recovery for damages associated with a claim alleging misrepresentation. *See Frias*, 181 Wn.2d at 433. And whether PNC's or NWTS's statements were misrepresentations, intentional or negligent, is a material issue of fact precluding summary judgment. CR 56(c); *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Because we hold that Cabage presented a genuine issue of material fact that she suffered a compensable CPA injury as a result of PNC's and NWTS's actions, we also hold that she was able to present a genuine issue of material fact as to whether she was injured by a misrepresentation from PNC and NWTS. We reverse the superior court's dismissal of her misrepresentation claims against PNC and NWTS.

## V. RECOVERABLE DAMAGES UNDER A CPA CLAIM

The superior court found, as a matter of law, that Cabage did not sustain any damages resulting from any alleged CPA violation and dismissed her CPA claims against PNC and NWTS. Cabage argues that the superior court erred. Viewing the evidence in the light most favorable to

---

[14] In her complaint, Cabage alleged that PNC and NWTS misrepresented the identity of the note owners, the identity of the beneficiary, and the identity of the person with actual authority to make decisions in the FFA mediation, thereby committing DTA violations and, correspondingly, CPA violations. Cabage alleged that these misrepresentations caused her compensable injury for damages associated with the nonjudicial foreclosure proceedings and the FFA mediation. PNC and NWTS respond that Cabage fails to show misrepresentation because there was no nonjudicial foreclosure and because they made no misrepresentations during mediation.

Cabage, there are genuine issues of material fact precluding summary judgment dismissal of her CPA claims against PNC and NWTS based on their allegedly deceptive acts.

Even without the sale of her property, Cabage may still recover under a CPA violation theory for conduct that would otherwise be a violation of the DTA. *Lyons*, 181 Wn.2d at 784. But the CPA's requirement that injury be to business or property excludes personal injury, "'mental distress, embarrassment, and inconvenience.'" *Frias*, 181 Wn.2d at 431 (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 57, 204 P.3d 885 (2009)). However, a CPA plaintiff can establish injury based on unlawful debt collection practices even where there is no dispute as to the validity of the underlying debt, and the injury element can be met even where the injury alleged is both minimal and temporary. *Frias*, 181 Wn.2d at 431.

As to damages, there are genuine issues of material fact as to (1) whether Cabage incurred costs and expenses in investigating PNC's and NWTS's authority to conduct nonjudicial foreclosure and (2) whether PNC had the authority to participate in mediation and whether it did so in good faith. Therefore, we hold the superior court's summary judgment dismissal of those claims was improper and we reverse. But we also hold that the superior court did not err in finding that, as a matter of law, Cabage failed to prove that her time off work, her attorney fees and costs in bringing the CPA claim, or relocation expenses are compensable injuries under the CPA.

A. Mediation Expenses

Cabage argues that her mediation-related expenses constitute an injury compensable under the CPA. PNC responds that Cabage cannot recover mediation-related expenses because PNC participated in the mediation in good faith. We hold that there are genuine issues of material fact

18

surrounding PNC's good faith participation in the mediation, thus, summary judgment dismissal of Cabage's injury claim here was improper.

Expenses incurred in extra mediation sessions necessitated by an opposing party's failure to prepare or mediate in good faith can be a compensable injury under the CPA. *Frias*, 181 Wn.2d at 432. Where a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property within the meaning of the CPA. *Frias*, 181 Wn.2d at 431-32.

Whether PNC's participation in mediation was in good faith is disputed. At the mediation PNC informed Cabage that an investor on her loan made the decision about her eligibility for loan modification, and it failed to provide the documentation detailing the decision. PNC also represented that it had the authority to make all decisions regarding loan modification. Viewing the facts in the light most favorable to the nonmoving party, we hold that Cabage provided sufficient evidence to raise a genuine issue of material fact as to whether PNC participated in mediation in good faith, and reverse the superior court's summary judgment dismissal of this claim.

B.  Investigation Expenses

Cabage also argues that she is entitled to recover against PNC and NWTS for expenses incurred in investigating the nonjudicial foreclosure notices. PNC responds that Cabage is not entitled to recover mediation fee expenses under *Frias* because Cabage's FFA mediation expenses were inevitable regardless of an alleged failure by PNC to mediate in good faith. We disagree.

Although expenses incurred to institute a CPA claim do not constitute a compensable injury, investigation expenses and other costs, including costs to consult an attorney, resulting from

19

a deceptive business practice establishes injury. *Panag*, 166 Wn.2d at 62-63; *see Frias*, 181 Wn.2d at 431-32. PNC's argument overlooks the fact that mediation, in general, may have been unnecessary if PNC or NWTS engaged in unauthorized nonjudicial foreclosure proceedings that prompted Cabage to pursue statutorily authorized mediation proceedings which she would otherwise have had no need to pursue. Viewing the facts in the light most favorable to the nonmoving party, we hold that Cabage provided sufficient evidence to raise a genuine issue of material fact as to whether, as a result of PNC's and NWTS's allegedly deceptive acts, she incurred costs and expenses in investigating PNC's and NWTS's authority to conduct nonjudicial foreclosure proceedings.

C. Time Off Work, Lawsuit Expenses, and Voluntary Relocation

Cabage also seeks to recover damages against PNC and NWTS incurred as a result of taking time off work, lawsuit expenses, and her relocation expenses. However, Cabage conceded—and the superior court ruled—that, because she was a salaried worker, she did not sustain loss of wages or income as a result of the improper nonjudicial foreclosure procedures.

1. Time off work

Although taking time off work may be a compensable injury, it is only sufficient to establish injury when it results in lost business or lost profits. *Panag*, 166 Wn.2d at 52; *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 563-64, 825 P.2d 714 (1992). Cabage alleges no lost business or lost profits; thus, her time off work is not a compensable injury under the CPA. Therefore, the superior court did not err in finding that, as a matter of law, Cabage failed to prove that her time off work was a compensable injury.

2. Attorney fees and costs

Expenses associated with bringing a lawsuit are not considered injuries for the purposes of a CPA claim, even if those expenses may be recovered in a request for attorney fees and costs upon successfully litigating a CPA claim. *Panag*, 166 Wn.2d at 62-63. Therefore, the superior court did not err in finding, as a matter of law, that attorney fees and costs incurred in bringing a CPA claim are not compensable injuries.

3. Voluntary relocation expenses

Cabage fails to provide authority for her assertion that she is entitled to recover the costs of voluntarily moving out and back in to the residence. Because Cabage fails to cite authority for her claim, we will not consider this issue further. RAP 10.3(a)(6).

VI. NON-RECOURSE JUDGMENT AND DECREE OF FORECLOSURE

After granting summary judgment to PNC and NWTS on all claims, the superior court found that PNC was the noteholder and, thus, entered a Non-Recourse Judgment and Decree of Foreclosure. Because there are genuine issues of material fact as to PNC's status as a noteholder, the superior court erred in entering an order and judgment of judicial foreclosure. We reverse the Non-Recourse Judgment and Decree of Foreclosure and direct the superior court to stay any attempts to transfer or sell the property pending further proceedings consistent with this opinion.

VII. ATTORNEY FEES

NWTS requests a cost award under RAPs 14.2 and 14.3, and a $200 statutory attorney's fee under RCW 4.84.080[15] for its expenses in this appeal, including the cost of reproducing briefs. Because we reverse and remand in part, we decline to award costs or fees to NWTS.

CONCLUSION

We hold that, as a matter of law, Cabage cannot pursue a DTA claim for monetary damages against PNC or NWTS because she did not suffer a nonjudicial foreclosure, and we affirm the superior court's dismissal of her DTA claims. We also hold that there are genuine issues of material fact as to (1) PNC's status as the noteholder because the beneficiary designation was ambiguous, (2) PNC's authority to appoint NWTS as the successor trustee for nonjudicial foreclosure, (3) PNC's authority to participate in mediation and whether it did so in good faith, and (4) whether NWTS met its duties to Cabage. Thus, the trial court erred in granting summary judgment dismissal of Cabage's CPA and misrepresentation claims against PNC and NWTS. We also hold that the superior court erred in entering an order and judgment of judicial foreclosure.

We further hold that whether Cabage suffered injury is a question of fact, but that she cannot recover damages for time off from work, relocation expenses, or attorney fees and costs for bringing the CPA claim, and we affirm the trial court's ruling as to these claimed damages. But if she prevails on her CPA claim, Cabage may recover mediation expenses and attorney fees and costs for investigating PNC's and NWTS's authority to conduct nonjudicial foreclosure.

---

[15] "When allowed to either party, costs to be called the attorney fee, shall be as follows: . . . (2) In all actions where judgment is rendered in the Supreme Court or the court of appeals, after argument, two hundred dollars." RCW 4.84.080(2).

No. 45953-1-II

Accordingly, we affirm in part, reverse in part, remand, and direct the trial court to stay the sheriff's sale pending further proceedings consistent with this opinion. Because we remand, we decline to award fees and costs to NWTS.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

We concur:

_____
BJORGEN, A.C.J.

_____
LEE, J.