# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| MARK LISSON and CATHERINE LISSON, | No.  50909-1-II |
| Appellants, | |
| v. | |
| WELLS FARGO BANK, N.A.; HSBC BANK USA, N.A. as Trustee for Deutsche Bank Alt-A Securities Mortgage Loan Trust, Series 2006-AR6, Mortgage Pass-Through Certificates; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; and DOE DEFENDANTS 1 THROUGH 20, inclusive, | UNPUBLISHED OPINION |
| Respondents, | |
| NORTHWEST TRUSTEE SERVICES, INC., | |
| Defendant. | |

EVANS, J.P.T.[*] — Mark and Catherine Lisson appeal the summary judgment dismissal of

their claims against Wells Fargo Bank N.A., HSBC Bank USA N.A. (HSBC Bank) as Trustee for

Deutsche Bank Alt-A Securities Mortgage Loan Trust, Series 2006-AR6, Mortgage Pass-Through

Certificates (Deutsche Mortgage Loan Trust), and Mortgage Electronic Registration Systems Inc.

---

[*] Judge Michael H. Evans is serving as a judge pro tempore for the Court of Appeals, pursuant to
RCW 2.06.150.

(MERS).[1]  The Lissons argue that the superior court erred when it granted summary judgment because there were genuine issues of material fact in dispute.

We hold that the Lissons' "Deed of Trust Act" (DTA) claims fail because no foreclosure sale occurred.  We also hold that the Lissons' Consumer Protection Act (CPA), ch. 19.86 RCW, claim fails as a matter of law.  Accordingly, we affirm.

FACTS

I.  BACKGROUND FACTS

A.  LOAN, PROMISSORY NOTE, AND DEED OF TRUST

In July 2005, the Lissons purchased real property in Washington.  They later borrowed $650,000 from Ohio Savings Bank under a loan number ending in 5891.  The Lissons executed an adjustable rate note (the note) payable to Ohio Savings Bank and its "successors and assigns" to memorialize the loan.  The note reflects an initial monthly payment of $3,182.29.  At some undisclosed point, Ohio Savings Bank endorsed the note in blank.

The Lissons also executed a deed of trust to secure the loan.[2]  The deed of trust identified Ohio Savings Bank as the lender and MERS as the nominee of Ohio Savings Bank and its "successors and assigns" as beneficiary.  Clerk's Papers (CP) at 326.  MERS registered the loan under MERS identification number 100162500050358911.  Both the note and the deed are dated September 21, 2005.

---

[1] The same order granted summary judgment on the Lissons' claims against Northwest Trustee Services Inc. (NWTS), but the superior court later dismissed NWTS with prejudice from this action pursuant to a stipulation between the Lissons and NWTS.  The Lissons do not challenge the dismissal of NWTS on appeal.

[2] Ohio Savings Bank had the deed recorded against the property on September 27, 2005.

### B. SECURITIZATION OF THE LISSONS' LOAN

1.   MORTGAGE LOAN PURCHASE AGREEMENT

Under a mortgage loan purchase agreement dated December 15, 2006, DB Structured Products Inc. sold the Lissons' secured loan to Deutsche Alt-A Securities Inc. (Deutsche Inc.) as part of a securitization transaction involving multiple loans. The record does not reflect the transaction, if any, by which DB Structured came to own the Lissons' loan.

The agreement noted that Deutsche Inc. intended to deposit the Lissons' loan, along with other loans, into a mortgage pool evinced by the Deutsche Mortgage Loan Trust. The agreement named HSBC Bank as trustee and Wells Fargo as master servicer and securities administrator of the Deutsche Mortgage Loan Trust. It also provided that DB Structured would deliver the original promissory notes evincing the underlying loans to Deutsche Inc. A redacted copy of the mortgage loan schedule for the securitization transaction covering the Lissons' loan reflects a Wells Fargo loan identification number ending with 8135 and MERS identification number 100162500050358911.

2.   ASSIGNMENT, ASSUMPTION, AND RECOGNITION AGREEMENT

An assignment, assumption, and recognition agreement was part of the securitization transaction covering the Lissons' loan. The agreement assigned all of DB Structured's interest in the Deutsche Mortgage Loan Trust and DB Structured's service agreement with Wells Fargo to Deutsche Inc.

3.   POOLING AND SERVICING AGREEMENT

Deutsche Inc., Wells Fargo, and HSBC Bank entered into a pooling and servicing agreement dated December 1, 2006, which applied to the securitization of the Lissons' loan. The

pooling and services agreement established the Deutsche Mortgage Loan Trust. Under the agreement, Deutsche Inc. deposited various loans, including the Lissons' loan, into the Deutsche Mortgage Loan Trust and received and owned certificates representing the entire beneficial ownership of the Deutsche Mortgage Loan Trust as consideration. The agreement expressed an intent that it "be construed as a sale of the Loans by" Deutsche Inc. CP at 429.

The pooling and servicing agreement designated Deutsche Inc. as depositor of the loans, Wells Fargo as master servicer and securities administrator of the Deutsche Mortgage Loan Trust, and HSBC Bank as trustee of the Deutsche Mortgage Loan Trust. The pooling and servicing agreement (1) transferred all Deutsche Inc.'s interest in the Lissons' loan to HSBC Bank in its capacity as trustee for the Deutsche Mortgage Loan Trust, (2) included HSBC Bank's acknowledgement that it received the Lissons' loan documents and that it or its custodian held the loan documents, (3) required that Wells Fargo administer the Lissons' loan and "have full power and authority to do any and all things which it may deem necessary or desirable in connection with such . . . administration" (CP at 379), (4) required that HSBC Bank furnish Wells Fargo with limited powers of attorney "necessary or appropriate to enable [Wells Fargo] to service . . . and administer" the Lissons' loan, including the "power and authority . . . to execute and deliver, on behalf of [HSBC Bank] instruments and documents" (CP at 379) and "to effectuate foreclosure" (CP at 382), (5) provided that Wells Fargo "shall not, except in those instances where it is taking action authorized pursuant to [the pooling and servicing agreement] to be taken in the name of [HSBC Bank], be deemed to be the agent" of HSBC Bank (CP at 382-83), (6) provided that the underlying mortgage documents held by Wells Fargo must be held "for and on behalf of" HSBC Bank and "shall be and remain the sole and exclusive property of" HSBC Bank (CP at 384), (7)

4

provided that Wells Fargo must foreclose upon the Lissons' property in the event of continuing default, and (8) provided that HSBC Bank could execute its powers and duties "either directly or by or through agents or attorneys" (CP at 417).

Wells Fargo, doing business as America's Servicing Company (ASC), subsequently began servicing the Lissons' loan under an account number ending 8135 on behalf of HSBC Bank. ASC was a trade name of Wells Fargo.

4.      CUSTODIAL AGREEMENT

HSBC Bank and Wells Fargo entered into a custodial agreement dated December 1, 2006, which applied to the securitization of the Lissons' loan. The agreement provided that HSBC Bank wanted Wells Fargo to take possession of the original promissory notes evincing the loans underlying the Deutsche Mortgage Loan Trust, including the Lissons' loan, as HSBC Bank's custodian. It specified that Wells Fargo would hold the note "for the exclusive use and benefit" of HSBC Bank. CP at 457. The custodial agreement also provided that HSBC Bank must grant Wells Fargo a limited power of attorney (POA) "to facilitate the administration of certain customary servicing functions" for the underlying loans. CP at 460. Moreover, the agreement authorized Wells Fargo "to give and receive notices, requests and instructions and to deliver certificates and documents . . . on behalf of" HSBC Bank. CP at 466. Pursuant to the custodial agreement, Wells Fargo maintained physical possession of the Lissons' original promissory note, endorsed in blank, on behalf of HSBC Bank at all relevant times.

## C. DEFAULT

Mark Lisson called ASC in January 2012 informing ASC that they would stop making payments on their loan. The Lissons did not make their monthly loan payment in January 2012 despite having the assets available to make the payment.

## D. ASSIGNMENT OF THE DEED OF TRUST TO DEUTSCHE MORTGAGE LOAN TRUST

On March 19, MERS, in its capacity as nominee for Ohio Savings Bank, purported to assign the Lissons' deed of trust to HSBC Bank as trustee for the Deutsche Mortgage Loan Trust. The assignment was electronically recorded the same day.

## E. ASC NOTICE OF DEFAULT

On August 17, ASC issued a letter informing the Lissons that they were in default for nonpayment of the loan. The total amount due to reinstate the loan was stated at $26,179.60.

## F. REQUEST FOR LOAN MODIFICATION AND AFFIDAVIT

The Lissons completed a loan modification request and affidavit under Home Affordable Modification Program (HAMP), 12 U.S.C. § 5219a, dated September 2. As of September 2, the Lissons had approximately $21,971 in monthly income, $14,775 in monthly expenses, and $1,916,000 in total assets. The Lissons declared that their cash reserves were insufficient to maintain their current mortgage payment of $3,095.19 and cover basic living expenses.

## G. LIMITED POA GRANTED BY DEUTSCHE INC. CERTIFICATES TRUST

On September 17, HSBC Bank, as trustee for "Deutsche Alt-A Securities, Inc., Mortgage Pass-Through Certificates Series 2006-AR6" (Deutsche Inc. Trust),[3] granted Wells Fargo a limited

---

[3] Exhibit A to the limited POA sets forth the securitizations referenced in the limited POA. It does not include the Deutsche Mortgage Loan Trust, but it does include the Deutsche Inc. Trust.

POA. The limited POA authorized Wells Fargo (1) to execute assignments of deeds of trust and other recorded documents, modifications, substitutions of trustee, and notice filings on behalf of HSBC Bank in connection with foreclosure actions and (2) to pursue secured debts arising from foreclosure. The POA was recorded on November 2.

## H. NWTS NOTICE OF DEFAULT

Wells Fargo instructed Northwest Trustee Services Inc. (NWTS) to foreclose upon the Lissons' property in the name of the Deutsche Mortgage Loan Trust. NWTS issued a notice of default to the Lissons dated December 7, purporting to act as HSBC's "duly authorized agent." CP at 286. It estimated that the amount required to cure the default was $43,404.84, including a $70 charge for posting the notice of default and a $1,402.03 title guarantee fee. The notice of default identified HSBC Bank as the note owner and Wells Fargo, doing business as ASC, as the loan servicer.

## I. BENEFICIARY DECLARATION

On December 13, Wells Fargo, doing business as ASC, executed a beneficiary declaration as attorney-in-fact for the Deutsche Mortgage Loan Trust.[4] The beneficiary declaration identified HSBC Bank as the "actual holder" and "actual owner" of the Lissons' note. CP at 601.

## J. MEDIATION

### 1. REFERRAL TO FFA MEDIATION

The Lissons retained counsel and were referred to foreclosure mediation under Washington's Foreclosure Fairness Act (FFA), ch. 61.24 RCW, in January 2013. Washington's

---

[4] The beneficiary designation names the Deutsche Mortgage Loan Trust, not the Deutsche Inc. Trust, in the limited POA Exhibit A.

Department of Commerce sent a notice of referral to mediation to the Lissons as the borrowers, ASC as the beneficiaries, and NWTS as the trustees of the deed of trust. The notice stated that the Lissons "and one or more representatives of the Beneficiary" must meet in person "to discuss possible options that might stop the foreclosure sale." CP at 594. Per the notice, ASC's representative at the mediation had to "have decision-making authority to agree to a resolution." CP at 597. The notice also instructed the Lissons that they must complete a request for modification and affidavit under the HAMP and instructed ASC that it must provide proof of note ownership, such as a beneficiary declaration pursuant to former RCW 61.24.030(7)(a) (2012).

2. MEDIATOR'S CERTIFICATION

In September, after two mediation sessions, the mediator certified that the Lissons and Wells Fargo, doing business as ASC, mediated in good faith but did not reach an agreement to avoid foreclosure. The mediator certified that ASC had authority to settle the matter. The mediator also certified that under the Federal Deposit Insurance Corporation net present value (NPV) analysis, former RCW 61.24.163 (2012), the NPV of the proposed modification to the Lissons' loan did not "exceed the anticipated net recovery at foreclosure." CP at 289. The mediator attached the NPV analysis to its certification.

K. ASSIGNMENT OF THE DEED OF TRUST TO DEUTSCHE CERTIFICATES TRUST

On November 20, Wells Fargo executed an assignment of the deed of trust as "attorney-in-fact" for the Deutsche Mortgage Loan Trust. CP at 67 (some capitalization omitted). The assignor was identified as "HSBC Bank USA, National Association, as Trustee for Deutsche Alt-A Securities *Mortgage Loan Trust*, Series 2006-AR6" (Deutsche Mortgage Loan Trust), while the assignee was identified as "HSBC Bank USA, National Association as Trustee for Deutsche Alt-

A Securities, *Inc., Mortgage Pass-Through Certificates* Series 2006-AR6" (Deutsche Inc. Certificates Trust). CP at 67 (emphasis added) (some capitalization omitted). The assignment was recorded on November 26.

### L. APPOINTMENT OF NWTS AS SUCCESSOR TRUSTEE

On January 3, 2014, Wells Fargo executed an appointment of successor trustee "as servicing agent for HSBC Bank" in its capacity as trustee for the Deutsche Inc. Trust. CP at 294. The appointment stated that HSBC Bank was the "present holder of the note" secured by the deed of trust. CP at 293. It purported to (1) remove Lawyers Title Insurance Corporation and any of its successors as trustee of the deed of trust, (2) appoint NWTS as successor trustee of the deed of trust "effective immediately" (CP at 293), and (3) ratify all acts of NWTS "heretofore or hereafter performed" to the extent such actions were "in accordance with the appointment, the Deed of Trust, and applicable law" (CP at 293). The appointment was subsequently recorded.

### M. NOTICE OF TRUSTEE'S SALE

On March 14, 2014, NWTS executed a notice of trustee's sale. The notice stated that it was retroactively effective as of March 10, 2014, and it was recorded on March 17, 2014. The trustee's sale was scheduled for July 18, 2014.

## II. PROCEDURAL HISTORY

### A. COMPLAINT

On July 14, 2014, the Lissons filed a complaint against HSBC Bank, Wells Fargo, MERS, and NWTS. The complaint alleged that HSBC Bank, Wells Fargo, and NWTS violated the DTA and the CPA. The Lissons did not include a specific allegation that MERS violated the DTA or

the CPA. The complaint also requested a temporary restraining order and preliminary injunction against NWTS as a third party claim.

Specifically, the Lissons alleged that HSBC Bank and Wells Fargo violated the DTA when they (1) failed to negotiate over foreclosure alternatives pursuant to RCW 61.24.031, (2) failed to demonstrate legal authority to modify the Lissons' loan or to initiate nonjudicial foreclosure proceedings under the FFA, (3) made false statements when they assigned the deed of trust and executed the beneficiary declaration, and (4) appointed NWTS as successor trustee. The Lissons alleged that NWTS violated the DTA when it (1) accepted and relied upon the beneficiary declaration executed by Wells Fargo and (2) "inflated" the charge for posting the notice of default and the title report fee listed in the notice of default because those costs were incurred by companies affiliated with NWTS. The Lissons also asserted that the alleged DTA violations established CPA violations.

The complaint further alleged that Wells Fargo's initiation of the nonjudicial foreclosure proceedings injured the Lissons because Wells Fargo's actions did not conform to the DTA. They alleged damages of attorney fees for investigating, preparing, and filing their claims, as well as the Lissons' travel costs associated with investigation and mediation of their claims. HSBC, Wells Fargo, and MERS filed a joint answer to the complaint. NWTS filed a separate answer.

B. MOTION FOR TEMPORARY INJUNCTION AND PRELIMINARY INJUNCTION

Concurrent with the filing of the complaint, the Lissons filed a motion for a temporary restraining order and preliminary injunction restraining NWTS from completing a trustee's sale. The Lissons submitted declarations with attached exhibits in support of the motion. Wells Fargo, HSBC Bank, and MERS opposed the temporary restraining order. In support of their opposition,

they submitted declarations with attached exhibits. The Lissons replied. NWTS continued the trustee's sale to November 14, 2014.

The superior court granted the Lissons' motion for a temporary restraining order and temporarily enjoined the sale of the property on the condition that the Lissons make payments of $3,095.19 to the superior court's registry. At a later hearing on the Lissons' motion for injunctive relief, the Lissons' counsel stated that the DTA claims were moot as a result of the holdings in *Frias v. Asset Foreclosure Services, Inc.*, 181 Wn.2d 412, 334 P.3d 529 (2014), and *Lyons v. U.S. Bank, National Association*, 181 Wn.2d 775, 336 P.3d 1142 (2014). The superior court subsequently granted the Lissons' motion for a preliminary injunction and restrained foreclosure against the property pending further orders from the superior court on the merits of the Lissons' claims under the DTA and CPA. The superior court ordered the Lissons to continue making monthly payments to the superior court's registry until further order of the court.

## C. SUMMARY JUDGMENT AND DISMISSAL OF NWTS

Wells Fargo, HSBC Bank, and MERS moved for summary judgment seeking dismissal of all claims. They also filed declarations with attached exhibits supporting the facts set forth in the background facts section above. The Lissons filed a response with a supporting declaration and attached exhibits. Wells Fargo, HSBC, and MERS replied and filed a statement of supplemental authority. The superior court issued a memorandum of decision granting summary judgment in favor of Wells Fargo, HSBC Bank, and MERS on all claims. The superior court subsequently entered an order dismissing NWTS with prejudice based upon a stipulation between the Lissons and NWTS. The Lissons appealed the summary judgment order.

11

ANALYSIS

I. STANDARD OF REVIEW

We review summary judgment orders de novo. *Citizens All. for Prop. Rights Legal Fund v. San Juan County*, 184 Wn.2d 428, 435, 359 P.3d 753 (2015). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We may affirm on any grounds established by the pleadings supported by the record. *Lane v. Skamania County*, 164 Wn. App. 490, 497, 265 P.3d 156 (2011).

A defendant who moves for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989); *Atherton Condo. Apt.-Owners Ass'n Bd. of Dir. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). Once the moving party meets their initial burden, the burden shifts to the party with the burden of proof at trial to present evidence of a material fact in dispute "'sufficient to establish the existence of an element essential to that party's case.'" *Young*, 112 Wn.2d at 225 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)); *Atherton*, 115 Wn.2d at 516. In demonstrating the existence of material facts, the nonmoving party may not rely on "mere allegations . . ., but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." CR 56(e); *Seattle Police Officers Guild v. City of Seattle*, 151 Wn.2d 823, 848, 92 P.3d 243 (2004). We draw all reasonable inferences from the facts in the light

most favorable to the nonmoving party. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004).

## II. DEED OF TRUST ACT

The Lissons argue that HSBC Bank, Wells Fargo, and MERS violated the DTA because the nonjudicial foreclosure process did not meet the DTA's statutory prerequisites to a trustee's sale. The Lissons cite to a number of authorities without analyzing how those authorities apply to their DTA claims. HSBC Bank and Wells Fargo respond that the Lissons' DTA claims for damages fail because it is undisputed that the trustee's sale did not occur. We agree with HSBC Bank, Wells Fargo, and MERS.

Under *Lyons*, "'the DTA does not create an independent cause of action for monetary damages based on alleged violations of its provisions where no foreclosure sale has been completed.'" 181 Wn.2d at 784 (quoting *Frias*, 181 Wn.2d at 417). Here, it is undisputed that the trustee never sold the Lissons' property. Without the triggering event of a foreclosure sale, there is no basis for the Lissons' DTA claim for damages. *See Lyons*, 181 Wn.2d at 784.[5] Therefore, the Lissons' DTA claim fails. We affirm the court's dismissal of the DTA claim.

## III. CONSUMER PROTECTION ACT

The Lissons argue that the DTA violations by HSBC Bank, Wells Fargo, and MERS amounted to unfair or deceptive acts that caused compensable injuries under the CPA. They contend that there were genuine issues of material fact as to each element of their CPA claims. HSBC Bank, Wells Fargo, and MERS respond that the Lissons failed to rebut evidence that (1)

---

[5] Additionally, the Lissons failed to assign error and did not provide argument and analysis on their alleged DTA claims. RAP 10.3(a)(4), (6).

the acts complained of were not unfair or deceptive, (2) the Lissons did not suffer an injury to their business or property, or (3) the acts complained of caused the alleged injuries. They also note that the Lissons failed to assign error based on these arguments. We reject the Lissons' arguments.

## A. LEGAL PRINCIPLES

While a plaintiff cannot bring a claim for damages under the DTA absent a completed foreclosure sale, "'under appropriate factual circumstances, DTA violations may be actionable under the CPA, even where no foreclosure sale has been completed.'" *Lyons*, 181 Wn.2d at 784 (quoting *Frias*, 181 Wn.2d at 417). Analysis of CPA claims premised on alleged DTA violations is the same as the analysis for any other CPA claim. *Frias*, 181 Wn.2d at 432-33. "To succeed on a CPA claim, a plaintiff must establish (1) an unfair or deceptive act (2) in trade or commerce (3) that affects the public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act complained of and the injury suffered." *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 834-35, 355 P.3d 1100 (2015); *see also* RCW 19.86.020, .090, .093.

We address the Lissons' arguments on each of the three elements for which HSBC Bank, Wells Fargo, and MERS contend that the Lissons did not meet their burden: unfair or deceptive act, injury to business or property, and causation.

## B. UNFAIR OR DECEPTIVE ACT

The Lissons argue that the following alleged acts were unfair or deceptive: (1) Wells Fargo appointed NWTS as successor trustee without authority, (2) Wells Fargo executed the beneficiary declaration without authority, (3) Wells Fargo represented that HSBC Bank was the noteholder in the appointment of NWTS as successor trustee and in the beneficiary declaration, (4) Wells Fargo

mediated the Lissons' request for a loan modification without authority,[6] and (5) Wells Fargo directed NWTS to foreclose on the property without authority.[7] HSBC Bank, Wells Fargo, and MERS respond that the alleged acts were not unfair or deceptive under the CPA as a matter of law. We agree with HSBC Bank, Wells Fargo, and MERS.

We review whether an act is unfair or deceptive de novo. *Trujillo*, 183 Wn.2d at 830. To show that an act was deceptive under the CPA, the plaintiff must show that the act "'had the capacity to deceive a substantial portion of the public.'" *Trujillo*, 183 Wn.2d at 835 (quoting *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 47, 204 P.3d 885 (2009)). To establish that an act was unfair under the CPA, the plaintiff may show that an act (1) offends public policy as established "'by statutes [or] the common law,'" (2) is "'unethical, oppressive, or unscrupulous,'" *Magney v. Lincoln Mut. Sav. Bank*, 34 Wn. App. 45, 57, 659 P.2d 537 (1983) (quoting *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972)), or (3) "'causes or is likely to cause substantial injury to consumers which is not reasonably

---

[6] In the facts section of their brief, the Lissons state that HSBC Bank and Wells Fargo improperly denied their request for a loan modification by using incorrect NPV inputs and calculations. However, in the analysis section of their brief, they concede that they "have never argued that they were entitled to a loan modification." Appellant's Opening Br. at 36 n.3. Moreover, the Lissons fail to provide authority or analysis on whether Wells Fargo improperly denied them a loan modification based on NPV inputs and calculations. As such, we do not reach that issue. RAP 10.3(a)(6).

[7] The Lissons allege that many other acts were improper in the facts section of their brief. Specifically, the Lissons allege that (1) MERS had no authority to assign the deed of trust to HSBC Bank, (2) the NPV calculation attached to the mediator's certification was incorrect, and (3) NWTS made false statements in the notice of default and the notice of trustee's sale. However, because the Lissons raise these factual allegations without providing further authority or analysis, we do not review those actions. RAP 10.3(a)(6). Moreover, because neither the mediator nor NWTS is a party to this action, we do not reach any CPA claim based on the conduct of those parties.

avoidable by consumers themselves and not outweighed by countervailing benefits,'" *Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013) (quoting 15 U.S.C. § 45(n)).

1.      USE OF AN AGENT

The Lissons premise their arguments about whether there was an unfair or deceptive act on their contention that the DTA does not permit deed of trust beneficiaries to use agents for the enforcement of promissory notes. They cite to various DTA provisions[8] and UCC provisions[9] in support. However, the Lissons acknowledge that a beneficiary may use an agent to execute an appointment of successor trustee and beneficiary declaration under *Bain v. Metropolitan Mortgage Group Inc.*, 175 Wn.2d 83, 97-98, 285 P.3d 34 (2012). HSBC Bank, Wells Fargo, and MERS respond that the Lissons fail to support their argument with authority and that the DTA permits a deed of trust beneficiary's use of agents. We agree with HSBC Bank, Wells Fargo, and MERS.

"Washington law, and the deed of trust act itself, approves of the use of agents." *Bain*, 175 Wn.2d at 106. For example, RCW 61.24.031 and former RCW 61.24.163(8)(a) provide that a deed of trust beneficiary's "authorized agent" may issue a notice of default and may participate in foreclosure mediation and consider loan modification requests on the beneficiary's behalf. *See also Trujillo*, 183 Wn.2d at 828 n.3. Additionally, while a deed of trust beneficiary may violate its "duty to mediate in good faith" by failing to designate an adequately authorized agent to mediate on its behalf, former RCW 61.24.163(10)(c), a mediator's certification that the beneficiary *or its*

---

[8] RCW 61.24.010(2) (successor trustee appointments), RCW 61.24.030(7) (beneficiary declaration), RCW 61.24.031 (notice of default), former RCW 61.24.040 (2012) (notice of trustee's sale), and RCW 61.24.163(7)(b)(ii) (foreclosure mediation).

[9] RCW 62A.1-201(21)(A) (defining a note "holder").

*agent* participated in good faith has "binding legal effects." *Brown v. Dep't of Commerce*, 184 Wn.2d 509, 518, 359 P.3d 771 (2015); *see* former RCW 61.24.163(12)(d), (13). Moreover, while instituting a nonjudicial foreclosure "without being a holder of the applicable note in violation of the DTA is actionable in a claim for damages under the CPA," *Lyons*, 181 Wn.2d at 789, an *agent* can represent the holder of a note. *See Bain*, 175 Wn.2d at 106.

Thus, the Lissons' argument that the DTA does not permit a deed of trust beneficiary to use an agent fails. *See Bain*, 175 Wn.2d at 106. We hold that a deed of trust beneficiary's use of an authorized agent does not transform an otherwise permissible act under the DTA into an unfair or deceptive act under the CPA.

2.    AGENCY RELATIONSHIP BETWEEN HSBC BANK AND WELLS FARGO

The Lissons argue that even if the DTA permits beneficiaries to act through agents, there were genuine disputes of material fact over whether Wells Fargo was HSBC Bank's agent. They contend that there was evidence that HSBC Bank did not exercise control over Wells Fargo and that the Wells Fargo employees who executed the appointment of successor trustee and beneficiary declaration did not have personal knowledge of, or rely on, any agency relationship. The Lissons rely on *Rucker v. Novastar Mortgage, Inc.*, 177 Wn. App. 1, 311 P.3d 31 (2013), in support. HSBC Bank and Wells Fargo respond that Wells Fargo was acting as HSBC Bank's attorney-in-fact and as HSBC Bank's authorized document custodian, with physical possession of the note at all relevant times. We reject the Lissons' argument.

The party asserting an agency relationship must show that (1) it manifested consent to the alleged agent acting on its behalf and subject to its control and (2) the agent manifested its consent to act on the principal's behalf and subject to the principal's control. *Bain*, 175 Wn.2d at 106-07.

17

Here, the provisions of the pooling and servicing agreement and the custodial agreement between HSBC Bank and Wells Fargo demonstrate mutual manifestations of consent sufficient to establish an agency relationship. In the pooling and servicing agreement, both parties manifested consent to Wells Fargo acting as HSBC Bank's agent when Wells Fargo took actions that the agreement provided it could take in HSBC Bank's name.

Moreover, other provisions in the pooling and servicing agreement and the custodial agreement also demonstrate mutual manifestations of consent to an agency relationship. The pooling and servicing agreement provided that (1) HSBC Bank must furnish Wells Fargo limited POAs necessary to Wells Fargo's service and administration of the Lissons' loan, including the power to execute documents "to effectuate foreclosure" on HSBC Bank's behalf (CP at 382), (2) Wells Fargo must hold the Lissons' note and other mortgage documents "on behalf of" HSBC Bank and that those documents would "remain the sole and exclusive property of" HSBC Bank (CP at 384), and (3) Wells Fargo must foreclose upon the Lissons' loan in the event of continuing default. Similarly, the custodial agreement provided that (1) Wells Fargo must hold the Lissons' note "for the exclusive use and benefit" of HSBC Bank (CP at 457), (2) HSBC Bank must execute "a limited [POA], appointing [Wells Fargo] as attorney-in-fact" "to facilitate the administration of certain customary servicing functions" for the Lissons' loan (CP at 460), and (3) it authorized Wells Fargo "to give and receive notices, requests and instructions and to deliver certificates and documents . . . on behalf of" HSBC Bank (CP at 466).

The Lissons' reliance on *Rucker* is misplaced. *Rucker* held that "where an entity fails to identify a lawful principal who controls its actions, it has not established that it is an agent for purposes of the DTA." 177 Wn. App. at 15. There, the servicing agreement under which the

alleged agent was operating on behalf of the deed of trust beneficiary specified that the servicer was "an independent contractor *and not that of a joint venturer, partner or agent.*" *Rucker*, 177 Wn. App. at 16. Because the agreement gave the servicer "unlimited power . . . to pursue foreclosure actions," Division One of this court concluded that the servicer was not acting as the deed of trust beneficiary's agent. *Rucker*, 177 Wn. App. at 16.

Here, unlike in *Rucker*, the pooling and servicing agreement provides that Wells Fargo "shall not, except in those instances where it is taking action authorized pursuant to [the pooling and servicing agreement] to be taken in the name of [HSBC Bank], be deemed to be the agent" of HSBC Bank.[10] CP at 382-83. The difference in language between the agreement in *Rucker* and the agreement in this case is significant. Therefore, we hold that *Rucker* is distinguishable.

We hold that the provisions in the agreements between HSBC Bank and Wells Fargo sufficiently establish that as a matter of law, there was an agency relationship.

3.    WELLS FARGO'S ACTIONS AS HSBC BANK'S AGENT

All the actions the Lissons challenge as unfair or deceptive were taken by Wells Fargo on behalf of HSBC Bank. The pooling and servicing agreement or the custodial agreement authorized Wells Fargo to take each of those actions on behalf of HSBC Bank. Because the agreements between HSBC Bank and Wells Fargo manifested mutual consent to an agency relationship for such actions, the Lissons' arguments that Wells Fargo's actions were unfair or deceptive because they were taken on behalf of HSBC Bank fail. We analyze each of the challenged actions in turn below.

---

[10] The pooling and services agreement also provided that HSBC Bank could execute its powers and duties "either directly or by or through agents or attorneys." CP at 417.

a.    APPOINTMENT OF NWTS AS SUCCESSOR TRUSTEE

Wells Fargo expressly executed the appointment of NWTS as successor trustee "as servicing agent for HSBC Bank." CP at 294. As previously discussed, the pooling and servicing agreement provided that Wells Fargo could execute documents "to effectuate foreclosure" on HSBC Bank's behalf. CP at 382. Similarly, the custodial agreement provided that Wells Fargo could administer customary servicing functions on HSBC Bank's behalf. Additionally, the limited power of attorney that HSBC Bank granted in Wells Fargo's favor authorized Wells Fargo to, as relevant here, execute substitutions of trustee and other recorded documents on behalf of HSBC Bank in connection with foreclosure actions.[11] That POA was recorded before Wells Fargo executed the appointment of NWTS as successor trustee.

The appointment of a successor trustee was a document that was necessary to effectuate foreclosure, and its execution was a customary servicing function. Though Wells Fargo did not declare that it was signing the document under the limited POA, the Lissons cite to no authority supporting the proposition that Wells Fargo was obligated to do so. In order to show that this was a deceptive act, the Lissons would have to show that it had the capacity to deceive a substantial portion of the public. *See Trujillo*, 183 Wn.2d at 835.

In order to show that this was an unfair act, the Lissons would need to show that it (1) offends public policy as established by statutes or common law, (2) is unethical, oppressive, or unscrupulous, or (3) causes or is likely to cause substantial injury to consumers that is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits.

---

[11] The limited POA was granted by Deutsche Inc. Trust and the appointment of successor trustee was executed by Wells Fargo as servicing agent for the Deutsche Inc. Trust.

*See Magney*, 34 Wn. App. at 57; *Klem*, 176 Wn.2d at 787. The Lissons do not argue nor do they cite to any authority that the appointment of a successor trustee was an unfair or deceptive act. Rather, they allege that any act taken by Wells Fargo on behalf of HSBC was unfair or deceptive because the agency relationship was improper. As discussed above, the agency relationship was proper, and therefore this necessary act of appointing a successor trustee was not unfair or deceptive.

Because HSBC Bank authorized Wells Fargo to execute the appointment of successor trustee as its agent, we hold that Wells Fargo's execution of the appointment of NWTS as successor trustee in HSBC Bank's name was not an unfair or deceptive act.

b. BENEFICIARY DECLARATION

The same provisions that support the conclusion that HSBC Bank authorized Wells Fargo to execute the appointment of successor trustee also support a conclusion that HSBC Bank authorized Wells Fargo to execute the beneficiary declaration. The limited POA was recorded before Wells Fargo executed the beneficiary declaration. The beneficiary declaration was a document that was necessary to effectuate foreclosure, and Wells Fargo expressly executed that document as "Attorney in Fact" for HSBC Bank in its capacity as trustee for the Deutsche Mortgage Loan Trust. CP at 601.

The limited POA is problematic on this point because, as previously stated, it covered the Deutsche Inc. Trust but not the Deutsche Mortgage Loan Trust. However, even assuming that this was a deceptive act, the Lissons' CPA claim still fails because, as discussed below, the Lissons have not shown a compensable CPA injury to business or property.

c.    REPRESENTATIONS OF HSBC BANK AS THE NOTE HOLDER

Wells Fargo also represented in the appointment of successor trustee and in the beneficiary declaration that HSBC Bank was the "holder" or the "actual holder" of the Lissons' note. CP at 601. As previously discussed, the pooling and servicing agreement provided that Wells Fargo must hold the Lissons' note and other mortgage documents "on behalf of" HSBC Bank and that those documents would "remain the sole and exclusive property of" HSBC Bank. CP at 384. Similarly, the custodial agreement provided that Wells Fargo must hold the Lissons' note "for the exclusive use and benefit" of HSBC Bank. CP at 457. Pursuant to those agreements, Wells Fargo maintained physical possession of the Lissons' original promissory note, endorsed in blank, on behalf of HSBC Bank at all relevant times as HSBC Bank's "servicer and document custodian." CP at 315.

An entity is entitled to enforce a promissory note as the actual holder of the note if such note is in its possession and endorsed in blank. RCW 62A.3-301; RCW 61.24.005(2); *Brown*, 184 Wn.2d at 524-25, 526 n.5, 541, 544; *see OneWest Bank, FSB v. Erickson*, 185 Wn.2d 43, 73-74, 367 P.3d 1063 (2016). An entity can maintain physical possession of a note, sufficient to establish its status as a holder, through a document custodian. *See Brown*, 184 Wn.2d at 522-23; *Bain*, 175 Wn.2d at 106, 112; *see also* former RCW 61.24.163(12)(d), (13).

HSBC Bank authorized Wells Fargo to hold the Lissons' note on behalf of, and for the exclusive use and benefit of, HSBC Bank as its document custodian. Therefore, Wells Fargo's representations that HSBC Bank held the note did not have the capacity to deceive a substantial portion of the public. Thus, we hold that the challenged representations were not unfair or deceptive.

d.     PARTICIPATION IN MEDIATION

Wells Fargo, doing business as ASC, participated in the mediation as HSBC Bank's authorized agent.  As previously discussed, the pooling and servicing agreement provided that Wells Fargo must foreclose upon the Lissons' loans in the event of continuing default.  Similarly, the custodial agreement provided that Wells Fargo could administer customary servicing functions on HSBC Bank's behalf.  Additionally, former RCW 61.24.163(8)(a) expressly provides that a deed of trust beneficiary's "authorized agent" may participate in foreclosure mediation and consider loan modification requests.

While a deed of trust beneficiary may violate its "duty to mediate in good faith" by failing to designate an adequately authorized agent to mediate on its behalf, former RCW 61.24.163(10), a mediator's certification that the beneficiary or its agent participated in good faith has "binding legal effects."  *Brown*, 184 Wn.2d at 518; *see* former RCW 61.24.163(12)(d), (13).  Absent bad faith, "the beneficiary may proceed with the foreclosure after receipt of the mediator's written certification" if "the parties are unable to reach an agreement."  Former RCW 61.24.163(13).  Thus, the DTA permits the beneficiary to use an authorized agent to mediate on its behalf.

Here, the mediator certified that Wells Fargo participated in the mediation with the authority to settle and in good faith.  The Lissons failed to rebut the evidence that HSBC Bank authorized Wells Fargo to mediate on its behalf or the evidence that Wells Fargo mediated in good faith.  Thus, we hold that Wells Fargo's participation in the mediation on behalf of HSBC Bank was not an unfair or deceptive act.

e.    DIRECTING NWTS TO FORECLOSE

Here, Wells Fargo instructed NWTS to foreclose in HSBC Bank's name.  As previously discussed, the pooling and servicing agreement provided that Wells Fargo must foreclose upon the Lissons' loan in the event of continuing default.  Similarly, the custodial agreement authorized Wells Fargo to instruct other parties in foreclosure-related matters "on behalf of" HSBC Bank.  CP at 466.  Because HSBC Bank authorized Wells Fargo to give such instructions as its agent, we hold that Wells Fargo's conduct does not constitute an unfair or deceptive act.

4.    MERS' ACTIONS AS BENEFICIARY OF THE DEED OF TRUST

The Lissons assert in the facts section of their brief that MERS was improperly listed as the beneficiary of the deed of trust and, therefore, improperly assigned the deed of trust to HSBC Bank.  HSBC Bank, Wells Fargo, and MERS respond that the Lissons' argument does not warrant review.  In the alternative, they argue that the fact that MERS was listed as a beneficiary on the deed of trust is insufficient to support a CPA claim.  We do not reach this issue.

The Lissons failed to provide argument, authority, or analysis on whether MERS' conduct violated the CPA.  We decline to reach the issue on that basis alone.  RAP 10.3(a)(6).

Additionally, MERS did not take any actions challenged as unfair or deceptive in the argument section of the Lissons' appellate brief.  MERS did not appoint NWTS as successor trustee, execute the beneficiary declaration, purport to actually hold the Lissons' note, participate in mediation, or initiate the nonjudicial foreclosure proceedings.  As such, we decline to review the superior court's order granting summary judgment on the Lissons' CPA claim against MERS.

C. INJURY

The Lissons argue that they were injured because they incurred expenses and attorney fees while participating in mediation and investigating their CPA claims. They cite to *Frias* in support. HSBC Bank, Wells Fargo, and MERS respond that costs associated with initiating a CPA action, without more, are not compensable injuries to business or property under the CPA. They contend that there is no compensable injury because the Lissons incurred the alleged expenses to get better loan terms, not to dispel uncertainty about their debt. We agree with HSBC Bank, Wells Fargo, and MERS.

"Compensable injuries under the CPA are limited to 'injury to [the] plaintiff in his or her business or property.'" *Frias*, 181 Wn.2d at 430 (alteration in original) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). Business and property injuries include, but are not limited to, losing title to a home, payment of illegal fees, and expenses incurred responding to requests for payments that are not lawfully due, such as attorney fees incurred "'to dispel uncertainty regarding the nature of an alleged debt'" or to dispel "uncertainty about who owns the note." *Frias*, 181 Wn.2d at 431 (*quoting Panag*, 166 Wn.2d at 62); *Trujillo*, 183 Wn.2d at 837. However, personal injuries, "'mental distress, embarrassment, and inconvenience,'" and "financial consequences of such personal injuries" are not compensable injuries under the CPA. *Frias*, 181 Wn.2d at 431 (quoting *Panag*, 166 Wn.2d at 57). For example, expenses incurred while "consulting an attorney to institute a CPA claim" are insufficient to show injury to business or property. *Panag*, 166 Wn.2d at 62.

The Lissons' reliance on *Frias* is misplaced. *Frias* is distinguishable because the plaintiff in *Frias* incurred mediation expenses, investigatory expenses, and attorney fees to respond to a

lender's bad faith conduct during mediation and to respond to the lender's request for fees she believed were unlawful. 181 Wn.2d at 417-18, 430-31. She alleged that no one representing the lender appeared at the first mediation session, and the lender's representative at the second mediation was unprepared. *Frias*, 181 Wn.2d at 432. She also alleged that she incurred expenses investigating whether requested fees were unlawful because they were anticipatory expenses the trustee expected to incur as a result of a future trustee's sale. *Frias*, 181 Wn.2d at 417-18. Our Supreme Court held that (1) mediation expenses allegedly incurred because of the lender's "failure to prepare and mediate in good faith could be an injury compensable under the CPA" and (2) expenses incurred to investigate whether the lender was seeking unlawful fees may be compensable under the CPA. *Frias*, 181 Wn.2d at 432.

Here, unlike in *Frias*, Wells Fargo, doing business as ASC, appeared at both mediation sessions as HSBC Bank's agent in good faith. Additionally, the Lissons have always admitted that they "defaulted on their mortgage loan because of financial problems" and did not incur expenses or attorney fees to determine whether Wells Fargo or HSBC Bank was seeking unlawful fees. Appellant's Opening Br. at 1.

We hold that the Lissons incurred the asserted expenses while consulting their attorney about instituting their CPA claims. *See* CP at 46 (Mark Lisson's declaration that the Lissons "had to pay an attorney to investigate [their] claims" and "to prepare, file and attend hearings" in superior court). Such expenses are insufficient to show a compensable injury under the CPA.

*Panag*, 166 Wn.2d at 62. Therefore, because the Lissons fail to show any compensable injury to support their CPA claim, their CPA claim fails.[12]

We hold that the Lissons have failed to create a genuine dispute of material fact on any one of those three elements. And even if the Lissons had created a genuine issue of material fact on the elements of unfair and deceptive acts or causation, their CPA claim necessarily fails because the Lissons suffered no compensable injury under the CPA. We affirm summary judgment dismissing the Lissons' CPA claims.

## IV. ATTORNEY FEES ON APPEAL

Wells Fargo and HSBC request attorney fees and costs on appeal under RAP 18.1.

RAP 18.1(a) allows us to grant reasonable attorney fees if authorized by applicable law. "'Fees may be awarded as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such fees.'" *Umpqua Bank v. Shasta Apts., LLC*, 194 Wn. App. 685, 699, 378 P.3d 585 (2016) (quoting *Thompson v. Lennox*, 151 Wn. App. 479, 491, 212 P.3d 597 (2009)). "'A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1.'" *Umpqua Bank*, 194 Wn. App. at 699-700 (internal quotation marks omitted) (quoting *Thompson*, 151 Wn. App. at 491).

The Lissons' deed of trust provides that the "Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term" therein, including attorney fees on appeal. CP at 339. The Lissons' note contains a similar

---

[12] Because the Lissons have failed to show any injury compensable under the CPA, we need not reach their arguments regarding causation.

provision. Here, Wells Fargo and HSBC are the substantially prevailing parties. Thus, we hold that they are entitled to reasonable attorney fees and costs on appeal.

## CONCLUSION

We hold that the Lissons' arguments related to their DTA claims fail because no foreclosure sale occurred and the Lissons failed to assign error and did not provide analysis. We also hold that the Lissons' CPA claim fails because they can show no injury compensable under the CPA. Wells Fargo and HSBC are entitled to reasonable attorney fees and costs on appeal. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

EVANS, J.P.T.

We concur:

LEE, A.C.J.

SUTTON, J.